Filed 4/28/15  P. v. Myers CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059430 |
| v. | (Super.Ct.No. RIF1201472) |
| RAYMOND DEAN MYERS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Gloria Trask, Judge.
Affirmed.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and
Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General,
Barry J.T. Carlton and Warren J. Williams, Deputy Attorneys General, for Plaintiff and
Respondent.

1

A jury convicted defendant and appellant Raymond Dean Myers of two counts of engaging in sexual intercourse with a minor 10 years of age or younger (Pen. Code,[1] § 288.7, subd. (a), counts 1 & 2) and two counts of engaging in oral copulation with a minor 10 years of age or younger (§ 288.7, subd. (b), counts 3 & 4). The trial court sentenced him to a total term of 40 years to life in state prison. On appeal, defendant argues that the trial court erred because it did not provide a unanimity instruction and because it did not provide an instruction on the lesser included offense of attempted sexual intercourse with a minor. He also argues that his trial counsel provided ineffective assistance. For the reasons discussed *post*, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The prosecution's case*

The victim was eight years old at the time of trial and was seven years old when the events she testified to occurred. Defendant was a friend of the victim's parents and babysat her and her two siblings in his home in Corona between June 2011 and January 2012. The victim testified that when defendant babysat her "sometimes he did bad things and sometimes he did good things." When asked to describe the bad things defendant did to her, the victim recounted multiple occasions of molestation.

---

[1] Unless stated otherwise, all further statutory references are to the Penal Code.

2

She described a time when she had been sleeping in defendant's bed and was awakened by a feeling of pain. Her pants had been removed and defendant was licking her "coliflor," which is a word she used for her "privacy place," or her vagina. When asked "[h]ow many different times" defendant had licked her vagina, the victim responded, "I can't remember how much times, but sometimes a lot." She said that "[e]very day I went he licked me[,]" and, when asked if defendant had licked her on more than two separate occasions, she said "Yes." She explained that it happened in defendant's room, when her brother was in another room and her parents were not around. She testified that it "hurt very much" when defendant licked her, and that one time he had told her not to tell anyone about what he had done because he would go to jail.

She also testified about an occasion when defendant put his "tail" (the word she used for "the part where he goes to the restroom," or his penis) in her vagina. She was lying in defendant's bed on her back with her legs apart and he was kneeling between her legs. She said that defendant took his tail and "put it in my coliflor." When asked to describe exactly what defendant had done with his tail, she explained that he had been touching it (and she mimicked this by collapsing her hands around what would be his penis) and "kind of put it like in the center." She said this was "a lot painful," but that defendant had told her it was "good for [her]." He had also told her not to tell anyone about it. She could not remember how many different times defendant put his tail in her

3

coliflor, but she thought it was "maybe twice." When asked later if she thought it had happened more than once, she said "I think like more than once."

The victim's mother testified that defendant looked after the victim and her siblings while she was at the hospital with the victim's stepfather, who was receiving cancer treatments at the time. Before June 2011, the victim was a happy child, who liked to sing and dance, but by January 2012, "[h]er self-esteem went down," "she wanted to be alone," and "she did not want to talk much."

About two weeks after the last time the defendant babysat the victim, the victim's mother asked her what was wrong. The victim pointed to her vagina and said defendant had been licking her. She also said that defendant had put his penis "right there" and again motioned to her vagina. The victim's parents immediately filed a report with the police, and the investigating officer scheduled an appointment with a forensic interviewer with child protective services.

The prosecution played the video recording of this interview for the jury. During the interview, the victim said that defendant licked her coliflor, and explained that "sometimes when he touches it, it tickles and then—and then it hurts." She said the licking happened "more times" than once. The first time, she went to sleep on defendant's bed and when she woke up, her pants were down and he was licking her. When asked about another time defendant had licked her, she said, "he didn't get anymore." When the interviewer reminded her that she had said the licking happened

4

more than once, the victim replied, "Oh, it was because he put the tail—I mean, he licked another time. He put the tail on me [¶] . . . [¶] on my coliflor [¶] . . . [¶] and that happened one time." The interviewer asked her again whether defendant had licked her one time or more than one time and she replied, "One time."

When asked about what defendant had done to her with his tail, the victim said that he put it on her coliflor. The interviewer asked if he put his tail "on" or "in" her coliflor, and the victim replied, "In." She had been lying down on his bed and he was sitting in front of her "holding the—the tail and putting it like in there to be still." She said defendant put his tail in her coliflor "more than one time." It hurt when defendant did this, but he told her it was good for her. When asked to describe one of the other incidents, she said "He did the same thing." The interviewer then asked "how much" defendant put his tail in her coliflor and what made him stop. The victim replied, "he did more than widen . . . and then he stopped." She described defendant's tail as "squishy," "thick, " and "hard . . . . [l]ike a bone."[2]

The prosecution also played a recording of a phone conversation in which the victim's stepfather asked defendant whether he had molested his daughter.[3] Defendant

---

[2] During the interview and at trial, the victim recalled an incident where defendant made her grab his penis and move her hand up and down, but this incident did not form the basis of any of the four counts against defendant.

[3] This was a pretext call, organized and recorded by the investigating officer.

denied molesting the victim, but said that he recalled a time he had been dreaming about a woman named Cindy, and the victim, who was sleeping in his bed, woke him up and said "get off me." He acknowledged that he "might have touched" the victim, thinking that it was Cindy. When asked if it was possible that he also had licked her he said, "that night I could have." Defendant told the stepfather that he knew how he felt because one of his daughters had been molested by his ex-brother-in-law.

The prosecution's forensic pediatrician, Dr. Vivanco, testified that the victim's genital exam was normal, and that this was consistent with the history provided by the forensic interviewer. She had not expected there to be any findings of physical trauma because genital tissue heals quickly and completely after 48 to 72 hours and because at least two weeks had passed since the last time defendant babysat the victim. A child can have a normal exam even though there was a history of penetration and the fact that the victim's hymen was unbroken did not mean she had not been penetrated. "Vulvar coitus" is a type of penetration that occurs when the penis moves past the labia majora, but not past the hymen. A child can perceive penetration and pain from vulvar coitus, and yet her hymen would still be intact. Dr. Vivanco concluded that nothing about the exam caused her to believe that the victim was not sexually abused.

### 2. *The defense's case*

Defendant's two daughters testified that he had never molested them and that they never saw him exhibit any strange behavior around children. Defendant's friend, his ex-girlfriend, and his landlord testified that he was good with children.

Defendant's friend also testified that he thought the victim's stepfather was "kind of a jerk" with his children to the point that they were a "little bit scared of him." On cross-examination, he admitted he had signed a witness statement prepared by defense counsel which included the statement that, in his experience, the stepfather was always "very respectful" to the victim and her siblings. He attempted to deny that he had ever made such a statement, but ultimately agreed that it was likely that the statement was accurate.[4]

Defendant testified that the victim's family was living at his house because they were homeless. He said that the victim's parents slept on an air mattress in his living room and that the stepfather would watch "his Mexican channels on my big . . . screen TV." Defendant believed the stepfather was jealous of his relationship with the victim's mother and feared that defendant would take his family away. Defendant also believed that this jealousy and fear led the stepfather to accuse him of molesting his daughter and

---

[4] The parties later stipulated that the witness had in fact previously stated that the stepfather was always respectful to his children, and that his trial testimony was the first time he stated otherwise.

to coach her to testify against him. He testified that the victim could "play it off very well," adding, "This is a very smart child."

Defendant explained that he cannot obtain an erection due to paralysis, and denied having committed the alleged offenses. He admitted that he had rolled on top of the victim once during a dream, but maintained that he had never pulled her pants down and licked her vagina. When asked on cross-examination how the victim would have been able to come up with the details of her testimony about what he had done to her with his tail, defendant stated, "She's got a brother that showers or bathes with her every day. And the mother has showed her . . . what a male's penis is supposed to look like." He did not know where the victim would have learned to describe and demonstrate the act of him kneeling down, with her between his legs, and putting his penis inside her vagina. He recalled telling the investigating officer, "there's no sense of painting a fence with a wet noodle," by which he meant, "I cannot obtain an erection, so why would I have her grab me?"

Defendant was also asked about his reference to his daughter's molestation during the pretext call. He testified that his ex-brother-in-law had molested his daughter. He was not sure of the extent of the molestation, but he thought that she had been inappropriately touched and that there "[m]ay have been penetration." He also testified that he could not remember his ex-brother-in-law's name, and that he never reported the

molestation to the police.  When called on rebuttal, his daughter testified that she had never been molested.

ANALYSIS

1.  *The unanimity instruction*

    a.  *Background facts*

Defendant was charged with two separate counts of sexual intercourse, or penetration, (counts 1 & 2) and two separate counts of oral copulation (counts 3 & 4).  At trial, the victim described one specific act of penetration and one specific act of oral copulation and testified that both the penetration and the oral copulation had happened more than one time.  During closing statements, the prosecutor argued that the evidence proved beyond a reasonable doubt that defendant was guilty of all four counts because the victim's testimony demonstrated that he orally copulated her two times and penetrated her two times.

The jury received four separate verdict forms for the two counts of penetration (counts 1 & 2) and the two counts of oral copulation (counts 3 & 4), and it also received the following instructions from the court:  "Your verdict must be unanimous.  [¶] . . . [¶] You will be given verdict forms.  [¶] . . . [¶]  If you are unable to reach a unanimous decision—If you are able to reach a unanimous decision on only one or only some of the charges, fill in those verdict forms only and notify the bailiff."

9

Defendant now contends that the trial court's failure to give the jury the standard unanimity instruction, or at the very least, the modified unanimity instruction applicable to generic molestation testimony, constitutes reversible error.  Respondent concedes that the court erred by not giving a modified unanimity instruction, but argues that the error was harmless.  We conclude that the error of failing to provide a modified unanimity instruction was harmless.

### b.  *A modified unanimity instruction was required*

We review a claim of instructional error de novo.  (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)  A criminal defendant is constitutionally entitled to a unanimous verdict "in which all 12 jurors concur, beyond a reasonable doubt, as to each count charged."  (*People v. Jones* (1990) 51 Cal.3d 294, 305 (*Jones*).)  A unanimity instruction is one in which the court explains to the jury " 'the need for unanimous agreement on the distinct criminal act or event supporting each charge.' "[5]  (*People v. Whitham* (1995) 38 Cal.App.4th 1282, 1295.)  In other words, when a defendant is charged with a criminal

---

[5]  The standard unanimity instruction that defendant argues should have been given is CALCRIM No. 3500 (entitled, *Unanimity*), which provides:

"The defendant is charged with *<insert description of alleged offense>* [in Count ____] [sometime during the period of ____ to ____].

"The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

offense but evidence of more than one act constituting the charged offense is introduced, the jury must be instructed that it must unanimously agree upon the *particular act* committed in order to convict.  (*Ibid*.; see *People v. Beardslee* (1991) 53 Cal.3d 68, 92 [unanimity is required when there is evidence of "acts that could have been charged as separate offenses"].)  A trial court has a sua sponte duty to give a unanimity instruction " '[w]hen the evidence tends to show a larger number of distinct violations of the charged crime than have been charged and the prosecution has not elected a specific criminal act or event upon which it will rely for each allegation.' "  (*Whitham*, *supra*, 38 Cal.App.4th at p. 1295.)

In *Jones*, the California Supreme Court recognized that child molestation cases pose a unique set of issues with regard to unanimity of verdict.  (*Jones*, *supra*, 51 Cal.3d at pp. 316-322.)  The court explained that oftentimes the child victim is only able to provide generic testimony that describes specific, though indistinguishable, acts of molestation.  (*Id.* at p. 321.)  It stated that, "[i]n such cases, although the jury may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described."  (*Ibid.*)  Thus, if the child's and the defendant's testimony is such that "there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed *all of them*," the court held that the jury should be given a "modified unanimity instruction."  (*Id.* at p. 322, italics added.)  A modified unanimity

11

instruction, "in addition to allowing a conviction if the jurors unanimously agree on specific acts, *also* allows a conviction if the jury unanimously agrees the defendant committed *all the acts* described by the victim."[6] (*Ibid*.)

Here, because the victim gave generic testimony describing repeated acts of penetration and oral copulation and, because defendant offered the same defense to all of these acts, there was no reasonable likelihood of jurors disagreeing about *particular* acts and instead the only question was whether he committed *all of them*.

Thus, the sole issue for the jury was the credibility of the victim's testimony versus the defendant's—it would either believe the victim and find that defendant had committed all of the acts she had described (thus convicting him of two counts of sexual intercourse and two counts of oral copulation) or believe that defendant had not

---

[6] The modified unanimity instruction that defendant argues should have been given to the jury is CALCRIM No. 3501 (entitled, *Unanimity: When Generic Testimony of Offense Presented*), which provides:  "The defendant is charged with _____ *<insert description[s] of alleged offense[s]>* [in Count[s] _____] sometime during the period of _____ to _____."
"The People have presented evidence of more than one act to prove that the defendant committed (this/these) offense[s]. You must not find the defendant guilty unless:
"1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed [for each offense];
"OR
"2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period [and have proved that the defendant committed at least the number of offenses charged]."

12

committed any of the acts the victim described. Accordingly, the trial court should have provided the jury with the modified unanimity instruction described in *Jones* to ensure that the jury unanimously agreed appellant committed *all of the acts* the victim described.

### c. *The error was harmless beyond a reasonable doubt*

The trial court's error was harmless under either *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) or *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).[7] California courts have held that the failure to give a unanimity instruction is harmless "[w]here the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853 (*Thompson*); see *People v. Hernandez* (2013) 217 Cal.App.4th 559, 577, citing *People v. Diedrich* (1982) 31 Cal.3d 263, 283 [failure to give unanimity instruction is harmless "where the defendant offered the same defense to all criminal acts and 'the jury's verdict implies that it did not believe the only defense offered' "]; *People v. Wolfe* (2003) 114 Cal.App.4th 177, 188 [failure to give unanimity instruction was harmless where jury rejected defendant's single defense to all instances of firearm possession].)

---

[7] There is currently a split in authority regarding which error standard to use for the failure to give a unanimity instruction. (*People v. Matute* (2002) 103 Cal.App.4th 1437, 1448–1449.)

13

Here, the combination of the trial testimony, closing arguments, jury instructions, and verdict forms ensured that the jury must have believed beyond a reasonable doubt that defendant committed all of the acts of molestation that he was accused of, if he committed any of them. First, as explained, the jury had no way to distinguish between the various acts of molestation because the victim testified generically to multiple acts of penetration and oral copulation and the defendant offered the same defense to all of the acts. Second, counsels' arguments and the court's instructions were clear that the jury had to find unanimously that defendant committed the four acts charged. During closing statements, the prosecutor argued that the jury should find defendant guilty of "the two times that it's charged that he put his penis inside of her vagina" and for "the two times charged that he licked her vagina"; defense counsel argued that defendant did not commit these acts. The court instructed the jury that if it was "able to reach a unanimous decision on *only one* or *only some* of the charges," it was to "fill in those verdict forms *only* and notify the bailiff."

Because defendant claimed that the entirety of the victim's testimony about the acts of molestation was fabricated, the jury either had to believe the victim that she was penetrated more than once and orally copulated more than once, or it had to disbelieve her; there was no third option (e.g., that defendant penetrated her once but did not commit any of the other three alleged acts). The fact that the jury returned all four verdict forms with a finding of guilty means that: (1) it unanimously found that defendant committed

14

the specific act of penetration and specific act of oral copulation that the victim recounted at trial (which, for ease of reference we will call counts 1 & 3) *and* it unanimously found that defendant had committed at least one more act of penetration and oral copulation (counts 2 & 4). In other words, the jury was convinced that defendant "committed all acts if he committed any." (*Thompson*, *supra*, 36 Cal.App.4th at p. 853.)

Defendant argues that the trial court's failure to provide a unanimity instruction was reversible error because "[a]lthough [his] defense to all the counts was essentially the same, a reasonable jury could still have rejected [that] defense, yet be unconvinced beyond a reasonable doubt that the evidence established more than one of each offense had been committed." Defendant misapprehends the nature of the testimony the jury heard at trial. Because the victim gave only generic testimony regarding the additional instances of sexual intercourse and oral copulation that form the basis for counts 2 and 4, there is no danger that, for example, half of the jurors would find defendant guilty of one distinct act as the basis for count 2 and the other half would find him guilty of a completely different distinct act. In the case of count 2, the only option for the jury was to believe or disbelieve that defendant had sexual intercourse with the victim one more time in addition to the specific instance she described. The same logic applies to count 4 and the charge of oral copulation. By returning a guilty verdict on each count, the jury demonstrated that it did not believe defendant's claim that the victim fabricated the

15

testimony; rather, it believed that defendant had engaged in each of the two types of molestation charged on two separate occasions.

Nothing in the record suggests that had the jury been instructed on unanimity, it would have acquitted defendant. We thus conclude that the error was harmless under either *Watson* or *Chapman.*

2. *The instruction on attempted sexual intercourse with a child*

Defendant contends that the trial court erred by failing to instruct the jury on attempted sexual intercourse with a child as a lesser included offense of the completed crime set forth in section 288.7, subdivision (a). We conclude that the trial court did not err and, even if it did, any error was harmless.

a. *The trial court did not err*

We independently review claims that a trial court erroneously failed to instruct on a lesser included offense, and in doing so consider the evidence in the light most favorable to the defendant. (*People v. Cole* (2004) 33 Cal.4th 1158, 1218; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1367-1368, fn. 5.)

Attempting sexual intercourse with a child is a lesser included offense of sexual intercourse with a child. (See, e.g., *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 609 ["California appellate courts have repeatedly accepted the principle that attempt is a lesser included offense of any completed crime"]; *People v. Bailey* (2012) 54 Cal.4th 740, 749 [attempted rape is a lesser included offense of rape].) A trial court has an

independent duty to instruct the jury on lesser included offenses when there is "substantial evidence raising a question as to whether all of the elements of the charged offense are present." (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.)  In this context, substantial evidence is "evidence that a reasonable jury could find persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)

To justify an attempted sexual intercourse instruction, there must have been substantial evidence that defendant intended to penetrate the victim's vagina with his penis but was "unsuccessful in the attempt." (*People v. Holt* (1997) 15 Cal.4th 619, 674.) However, where "there is no evidence that the offense was less than that charged," there is no duty to instruct on the lesser included offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

Here, when viewed in the light most favorable to defendant, there is insufficient evidence in the record to support a reasonable finding that defendant attempted to have sexual intercourse with the victim but was unsuccessful.  On multiple occasions at trial, the victim unequivocally testified that defendant put his tail "in" her coliflor.

Defendant argues that there is substantial evidence to support an attempt conviction because during the forensic interview the victim initially said that defendant put his tail "on" her coliflor.  Defendant ignores the fact that the victim immediately corrected that statement and explained that defendant had put his tail "in" her coliflor,

17

which the jury could reasonably infer meant that her initial use of the word "on" was an inadvertent mistake.

Moreover, even more significant than the victim's retraction of the word "on," is her description of defendant's actions to the forensic interviewer. She explained that defendant was in front of her and "he was holding the—the tail and putting it like in there to be still." She said that this "hurt" and that she felt like she was going to "cry." When asked how far defendant had inserted his tail into her coliflor, she responded "maybe like sorta" and said "he did more than widen and . . . then he stopped." A jury could reasonably infer from this description that she meant that defendant caused her labia majora to widen when he inserted his penis into her vagina.

The victim's explanation of this same incident at trial further supports the conclusion that her initial use of the word "on" was an inadvertent mistake. For example, she testified that defendant put his tail in her coliflor "like in the center," and, using hand movements to illustrate, she mimicked collapsing her hands around a penis and inserting it into a vagina. In light of the substantial amount of testimony in support of penetration, we conclude that the victim's initial use of the word "on" is too thin a basis to support an instruction on attempt.

Lastly, we reject defendant's claim that the lack of physical findings of trauma in victim's vaginal exam "corroborated an attempted sexual penetration" because in fact this evidence cuts both ways—i.e., it does not support a finding of the lesser crime while at

18

the same time exculpating defendant of the greater. (See *Breverman*, *supra*, 19 Cal.4th at p. 162 [substantial evidence to support an instruction on a lesser included offense is " ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, *but not the greater*, was committed"], brackets in original.) Dr. Vivanco testified that there can still be penetration without a rupturing of the hymen and that, if there had been any other injuries to the vagina, they would have healed long before she conducted the exam. Thus, the victim's vaginal exam was a neutral piece of evidence—it did not tend to demonstrate penetration, but neither did it tend to demonstrate attempted penetration.

### a. *Any error was harmless*

Even if the victim's initial statement that defendant put his tail on her coliflor did constitute substantial evidence of attempted sexual intercourse with a child, any error in not instructing the jury on attempt is reversible only if it was prejudicial to defendant under the test set forth in *Watson*. (*Breverman*, *supra*, 19 Cal.4th at p. 178.)[8] To prevail under that test, a defendant must demonstrate "a reasonable probability that the error

---

[8] We reject defendant's argument that this type of instructional error must be reviewed under the standard set forth in *Chapman*, *supra*, 386 U.S. at p. 24 because it deprived him of his due process right "to have a jury determine all factual issues relating to a charged offense." Defendant cites to authority that fails to support his position, and he ignores the California Supreme Court's holding that "in a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under *Watson*." (*Breverman*, *supra*, 19 Cal.4th at p. 178.)

19

affected the outcome" of the case. (*Id.* at 165.) Reasonable probability under the *Watson* test means "a reasonable chance," which is "more than an abstract possibility." (*People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 918.) In applying the *Watson* test, we consider " 'whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' " (*People v. Rogers* (2006) 39 Cal.4th 826, 870, original italics.)

Here, the jury was instructed that sexual intercourse means "any penetration, *no matter how slight*, of the vagina or genitalia by the penis," and, for the reasons just explained, the scant evidence of attempted penetration is weak compared to the substantial evidence of penetration. (See, e.g., *People v. Banks* (2014) 59 Cal.4th 1113, 1161 (*Banks*) [failure not to instruct on lesser included offense was harmless where there was "some evidence" that the defendant committed the lesser offense, but "the far more plausible inference" was that he committed the greater offense].)

Defendant argues that there were ambiguities and inconsistencies in the victim's testimony regarding penetration that were "substantial enough" to render the error prejudicial. We take the opposite view of the victim's testimony. With the exception of her initial use of the word "on," all of her trial testimony and statements during the forensic interview support a finding that defendant penetrated her genitalia. For example, the jury saw the recording of the interview where, after saying "on," the victim corrected

that she meant "in."  The jury also saw her mimic defendant's act of putting his penis into her vagina "in the center," "in there to be still," where it "did more than widen."  The victim repeatedly described the times that defendant put his tail in her coliflor as painful, and Dr. Vivanco testified that a child would perceive pain from penetration past her labia majora.

The ambiguity in the victim's testimony was not "substantial."  Rather, any ambiguity was the linguistic result of an eight-year-old child trying to communicate sexual situations she experienced more than a year earlier, situations for which she does not yet have an articulate vocabulary.  Despite her use of idiosyncratic terms for genitalia and sexual activities and her inability to recall, e.g., dates or the specific number of times the sexual abuse occurred, she is quite clear and consistent on her recollection of what happened to her—defendant penetrated her vagina with his penis.

We conclude that it is not reasonably probable that, had the jury been instructed on attempt, it would have disregarded the substantial amount of evidence in support of penetration and instead convicted defendant of attempt based on the victim's initial use of the word "on" or alleged ambiguities in her testimony regarding penetration.

3.  *Ineffective assistance of counsel*

Defendant contends that he received ineffective assistance of counsel throughout his trial because his attorney was unprepared, offensive, and lacked a basic understanding of evidentiary rules and trial procedure.  In his opening brief, defendant recounts virtually

21

the entirety of counsel's performance at and immediately leading up to trial, and points to numerous examples of alleged deficiencies. We conclude, however, that none of these alleged errors constitutes ineffective assistance of counsel.

To succeed on an ineffective assistance of counsel claim, defendant must demonstrate that counsel's performance was deficient (i.e., it fell below an objective standard of reasonableness) and that the deficiency was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-695 (*Strickland*); *People v. Bolin* (1998) 18 Cal.4th 297, 333.)

Where, as here, the claim is based on alleged errors by counsel and the record on appeal does not contain an explanation for the errors, we must reject the claim unless there could be "no satisfactory explanation" for counsel's conduct. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [reversing a holding of ineffective assistance of counsel where record did not show why counsel failed to move to suppress evidence obtained during a warrantless search because counsel was "perhaps" aware that the officer had a justification for the search].) Under these circumstances, the defendant must overcome a "strong presumption" that counsel's conduct was sound trial strategy or otherwise within the wide range of reasonable professional assistance. (*Strickland*, *supra*, 466 U.S. at pp. 689-690; see *People v. Leonard* (2014) 228 Cal.App.4th 465, 484.)

We need not address both prongs of the *Strickland* test if defendant makes an insufficient showing on one. (*Strickland*, *supra*, 466 U.S. at p. 697 ["In particular, a

22

court need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies"]; *People v. Kipp* (1998) 18 Cal.4th 349, 366.) To establish prejudice, the defendant must show that there is a "reasonable probability" that, but for counsel's errors, the result of the proceeding would have been more favorable to him. (*People v. Seaton* (2001) 26 Cal.4th 598, 666.) The defendant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors." (*People v. Williams* (1988) 44 Cal.3d 883, 937.) We now address the numerous alleged errors made by defense counsel in turn.

### a. *Counsel's opening statement*

During opening statements, defense counsel argued that the charges against defendant were "trumped up by the little girl's disruptive family" because "[t]he stepfather's very jealous of [defendant]." He argued that "the little girl has been very well coached, by maybe the . . . district attorney and others, to accuse [defendant]." He also argued that defendant "probably wasn't able to do this thing that he's supposedly accused of" because "at the time of this incident, he was paralyzed below the waist."

Defendant now contends that counsel's opening statement was deficient because: (1) the argument that the victim's testimony was fabricated was unsupported by the evidence; (2) counsel's allegation that the district attorney coached the victim "provided the evidentiary basis, as prior consistent statements, to allow the introduction of the

23

[forensic interview] video"; and (3) paralysis below the waist was an invalid defense because, "according to the medical testimony here . . . a flaccid penis could penetrate female genitalia within the meaning of [section 288.7, subdivision (a)]." We conclude that these statements do not constitute deficient performance.

Regarding counsel's fabrication argument, defendant himself testified that he believed her story was fabricated by her stepfather as a result of his jealousy, and we cannot conclude on the record before us that counsel did not have a strategic motive for attacking the victim's credibility in this manner. Regarding counsel's coaching allegation, contrary to defendant's assertion, it was not the evidentiary basis for introducing the video of the forensic interview. The video was independently admissible

under Evidence Code section 1360,[9] and the prosecutor had announced his intention to introduce it before either side had given opening statements.[10]

Finally, we reject the argument that defendant's paralysis is not a valid defense to a claim of sexual intercourse with a child. Evidence of paralysis below the waist would tend to contradict the victim's description of the sexual intercourse, namely, that defendant was kneeling on top of her as she lay on the bed. We therefore cannot conclude that there was no tactical reason for advancing this theory at trial.

b. *Counsel's objection to admission of the pretext call*

Outside the presence of the jury, defense counsel objected to admission of the pretext call on the ground that the recording was made without defendant's knowledge.

---

[9] Evidence Code section 1360, subdivision (a), states: "In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another . . . is not made inadmissible by the hearsay rule if all of the following apply:

"(1) The statement is not otherwise admissible by statute or court rule.

"(2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.

"(3) The child [testifies at the proceedings] . . . ."

In this case, the trial court made the requisite findings before admitting the video recording, and stated, "Evidence Code 1360 provides for situations where the child testifies and her testimony is consistent. In many respects it is consistent. In some respects, she can't remember." The court asked the prosecutor if this was his purpose in requesting to play the recording, and he replied that it was.

[10] The prosecutor only offered defense counsel's accusation during opening statement as an *additional* reason for admitting the recording.

The prosecutor responded that the statements in the call were admissible as statements of a party opponent. The court asked defense counsel for authority supporting his objection and he responded "[i]n many other cases in this courtroom that rule applies, to introduce evidence the client is not aware that it's being recorded." The court allowed counsel until the next morning to provide authority for his objection and ruled that the call was admissible in the absence of such authority.[11]

Defendant asserts that counsel's objection to the recording was "frivolous and demonstrated his lack of knowledge about fundamental rules of evidence [because] the statements of a party opponent are well-established exceptions to the hearsay rule." Even if he is correct that his counsel's objection constitutes deficient performance, he cannot demonstrate any prejudice. Counsel's arguments as to the inadmissibility of the recording were presented outside of the presence of the jury and by that fact necessarily could not have affected the outcome of defendant's case.

---

[11] The next day, defense counsel did not provide the court with the authority for his inadmissibility argument and, during the testimony of the investigating officer, the prosecutor sought to play the recording. In the presence of the jury, the court noted that the defense's previous objection to the recording was overruled and defense counsel responded, "The only thing we had is about [¶] . . . [¶] telephone records being obtained without the knowledge or consent."

### c. *Failure to request unanimity and attempt instructions*

Defendant argues that counsel's failure to request a unanimity instruction and an instruction on the lesser included offense of attempted sexual intercourse with a child constitutes ineffective assistance. He asserts that counsel should have argued at trial either "that [the victim's] lack of clarity [and] the lack of physical evidence established reasonable doubt that either offense occurred more than once," or "that he was only guilty of attempted sexual intercourse." Defendant's arguments are unavailing because they assume that he was prejudiced by the absence of instructions on unanimity and attempted sexual intercourse with a child and, as we concluded *ante*, he was not.

### d. *Other alleged errors*

Defendant recounts many of counsel's actions before and during trial in an attempt to support his claim that his attorney was unprepared and abrasive. While some of counsel's remarks may not have been as tactful as one might expect given the seriousness of the crimes,[12] defendant has not shown that he has suffered prejudice as a result of any

---

[12] For example, after Dr. Vivanco explained the anatomy of a vagina and how a child might perceive pain as a result of vulvar coitus, counsel began his cross-examination by saying, "Thank you very much, Doctor, for giving us an education in zoology." At the beginning of his cross examination of the victim, counsel asked "Do you habla espanol?"—an apparently random question because counsel never touched upon the issue of the victim's language again.

of these examples of alleged deficiencies.[13]  In light of the overwhelming evidence of guilt in the form of the victim's testimony, we conclude that none of counsel's actions described in defendant's briefs had a demonstrable effect on the outcome of the case. (See, e.g., *People v. Bradford* (1997) 14 Cal.4th 1005, 1052 [where evidence of defendant's guilt was overwhelming, the alleged errors made by trial counsel in failing to object to the admission of evidence were not prejudicial because the result of the proceeding would not have been different in the absence of such errors].)

e.  *Counsel did not completely fail to represent defendant*

Lastly, we address defendant's argument that counsel's conduct was so egregious that "no specific showing of prejudice is required" under *United States v. Cronic* (1984) 466 U.S. 648 (*Cronic*).

Under the Supreme Court's holding in *Cronic*, prejudice may be presumed where "counsel entirely failed to subject the prosecution's case to meaningful adversarial testing." (*Banks*, *supra*, 59 Cal.4th at pp. 1169-1170, citing *Cronic*, *supra*, 466 U.S. at p. 659.)  The Supreme Court has clarified that this presumption applies in very limited

---

**13** For instance, defendant describes counsel's justifications to the court as to why he was having trouble providing witness statements to the prosecution, as well as counsel's unsuccessful attempts to convince the court that testimony on defendant's background was relevant.  This conduct did not prejudice defendant because the jury did not see counsel make the unsuccessful arguments defendant complains of, and because counsel's tardiness in providing witness statements to the prosecution did not preclude him from calling those witnesses at trial.

circumstances, where the attorney's failure to test the prosecutor's case is "*complete*." (*Bell v. Cone* (2002) 535 U.S. 685, 696–697, italics added.)  Otherwise, " 'specific errors and omissions' by trial counsel must generally be litigated as ineffective assistance of counsel claims under *Strickland.*"  (*Banks*, *supra*, 59 Cal.4th at p. 1170 [where counsel "unwisely" referenced a partial confession defendant had made to the police that the prosecution did not plan to introduce into evidence, the court held *Cronic* did not apply because counsel did not fail to oppose the prosecution throughout the proceeding as a whole, but rather at specific points].)  California courts apply *Cronic's* presumed prejudice rule " 'only where counsel was either totally absent or was prevented from assisting the defendant at a critical stage.' " (*People v. Brown* (2014) 59 Cal.4th 86, 115.)

Here, the record makes clear that counsel did not completely fail to subject the prosecution's case to meaningful adversarial testing.  To the contrary, he objected to the introduction of evidence, cross-examined each of the prosecution's witnesses and attempted to challenge their credibility, and called several character witnesses for the defense.  During closing statements, he made valid attempts to inject reasonable doubt into the prosecution's case, such as by pointing out that the victim could not identify defendant at trial, that there was no physical evidence of molestation, and that no one else beside the victim testified to having personal knowledge of the crimes.  Because counsel's actions were consistent with a deliberate trial strategy, whatever its ultimate merits or success, and because his alleged deficiencies were particularized and not so

29

pervasive that they affected *every aspect* of trial, we refuse to extend *Cronic's* extremely

limited holding to this case.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

KING
J.

30