[No. B155099. Second Dist., Div. Four. Dec. 5, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANKLIN MATUTE, Defendant and Appellant.

## Counsel

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Victoria B. Wilson and Susan D. Martynec, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

## VOGEL (C. S.), P. J.—

### INTRODUCTION

Defendant Franklin Matute challenges the judgment of conviction by which he was convicted of 15 counts of forcible rape. He contends that his due process rights were violated because the victim, his 15-year-old daughter, failed to give specific details regarding the time and circumstances of each count for which he was charged, and that the lack of due process was exacerbated by the trial court's failure to give the jury a unanimity instruction. We find no reversible error and accordingly affirm the judgment of conviction.

## PROCEDURAL BACKGROUND

Appellant was charged by information with 15 counts of rape in violation of Penal Code section 261, subdivision (a)(2).[1] It was alleged as to each count that the act of sexual intercourse took place between August 1, 1999 and November 1, 2000, and the victim in each instance was J. M.

Appellant pleaded not guilty to each count.

A jury found appellant guilty of all charges. Appellant was sentenced to a state prison term of 120 years, representing the upper term of imprisonment, to run consecutively, for each of the 15 counts.

This appeal was taken from the judgment of conviction.

## FACTUAL BACKGROUND

### I. *Prosecution's Evidence*

J. M., born in July 1984, is appellant's daughter. Appellant began touching her breasts, vagina, and buttocks in a sexual way when she was about six years old. He began having sexual intercourse with her when she was about 12 years old. This occurred a couple of times a month, when her brother, Franklin, Jr., and appellant's girlfriend were not home. She sometimes resisted, and appellant would beat her or threaten to beat her and force her to have sexual intercourse. He told her not to tell anyone and that, "I'm your father and I can do whatever I want." She often did not resist out of fear of being beaten.

Appellant, J. M., and Franklin, Jr., moved from Florida to Los Angeles in August 1999 when J. M. was 15 years old. Appellant's girlfriend did not move with them, and the brother lived with them only occasionally. After the move, the frequency of the acts of sexual intercourse increased to "a couple of times a week." She sometimes resisted, and appellant would beat her and also have sexual intercourse with her. Sometimes she did not resist.

In June 2000, a month before her 16th birthday, J. M. missed her period. She told appellant, and he took her to an abortion clinic and she had a pregnancy test done; the results were positive. J. M. had an abortion on June

---

[1] All further statutory references are to the Penal Code.

29, 2000. Appellant directed J. M. to take birth control pills and resumed having sexual intercourse a week later, after the bleeding from the abortion stopped. He continued to have sexual intercourse with her about twice a week; she occasionally resisted and was beaten, and then would not resist for awhile.

On her birthday in mid-July 2000, appellant took J. M. and her friend to a restaurant for dinner. After taking her friend home, he took J. M. to a Holiday Inn where he got drunk, threw her on the floor, beat her, and forced her to have sexual intercourse.

J. M. testified unequivocally that since moving to California a week never went by without appellant forcing sexual intercourse upon her.

J. M. began dating a young man named Michael in March 2000. In late October 2000, J. M. and Michael began talking about sex and virginity. J. M. was concerned because her virginity "had been taken away" from her by her father. She spoke to her teacher, Cynthia Vega, asking for advice whether she should tell her boyfriend about something that had happened that she thought was important. Eventually and reluctantly, J. M. told Ms. Vega that she had been sexually abused by her father and he had impregnated her. Ms. Vega said she would have to report it, and J. M. lied and said that it had happened in the past but had stopped once she had the abortion. The next day Ms. Vega told J. M. she would have to report it, and J. M. "asked her immediately to please not report it." In Ms. Vega's words, J. M. continually "begged" her not to tell anyone. J. M. testified she was scared because she did not know if appellant would find out she had told, and if she still had to live with him he would hit her even more.

The following day, November 1, 2000, J. M. was called out of class by a social worker, Rachel Ball. J. M. told Ms. Ball that appellant had forced her to engage in sexual intercourse that morning before school. The police were called and J. M. was taken to a hospital. A pelvic examination was performed, swabs were taken from J. M.'s vaginal and anal areas, and a blood sample was drawn. The vaginal and anal swab samples contained spermatozoa. Lewis Maddox, Ph.D., a technical reviewer at Cellmark Diagnostics, testified that DNA extracted from J. M.'s vaginal swab contained a sperm source and a nonsperm source. The nonsperm source matched J. M.'s DNA profile. The DNA from the sperm source of the vaginal sample matched the DNA profile obtained from appellant's blood sample. Maddox testified that the frequency "in the Hispanic population of the DNA profile from the sperm fraction of the combined vaginal swab sample and the blood [from appellant] is approximately one in 15 billion unrelated individuals."

## II. *Defense Evidence*

Appellant testified in his own defense. He said that after he moved to California with Franklin, Jr., and J. M., he began working nights. This became a problem when he found out that Franklin, Jr., would have his girlfriend over and J. M. would have her boyfriend over. He confronted J. M. and when she did not tell him what was going on, he hit her. He said this was the only time he ever hit her.

Appellant denied ever having sexual intercourse with J. M. When asked by the prosecutor how his sperm was found inside J. M.'s vagina, he replied, "That's what you should be investigating."

The defense called Reverend Ruth Morales of the First Baptist Church of Los Angeles, which appellant and J. M. attended together at least twice a week before appellant's arrest. Morales testified that, after appellant's arrest, on numerous occasions J. M. said she intended to come to church and wanted to talk to Morales, but then failed to come to church except for two or three times. Asked to describe their relationship, Morales said, "They seemed like a close father and daughter relationship, very close." She stated further, "The thing is they are an attractive couple. [J. M.] is a very mature looking young lady. Mr. Matute, a nice, handsome young man. And you could almost—if I hadn't known that they were father and daughter, I could have said they were a couple."

Reverend David Wheeler, also of the First Baptist Church of Los Angeles, testified that after appellant's arrest J. M. did not continue to attend church regularly. He questioned her about why she was not regularly attending church and she did not respond, rather she deflected the question. From what he observed, appellant and J. M. had a very close, "harmonious" relationship. It seemed to him to be more of a peer relationship than a father-daughter relationship. After appellant's arrest, J. M. told Wheeler and Morales that appellant had sexually abused her, and had impregnated her and compelled her to have an abortion.

## DISCUSSION

Appellant contends on appeal that J. M.'s testimony regarding the rapes was "generic." "With the exception of two or possibly three particular incidents, there was no testimony regarding any specifics of any of the offenses. Apart from the generalization that the offenses involved sexual

intercourse, and that there was physical violence involved on some but not all occasions, [J. M.] declined to offer any specifics to distinguish one incident from another." (Fn. omitted.) "The People presented evidence of a non-specific number of offenses committed over a 15 month period of time, with practically no reference to any distinguishing details of time, place, or manner. Appellant was required to meet this vague evidence with a flat denial, without an opportunity to defend by alibi or lack of opportunity to commit any particular offense. This was patently unfair and deprived appellant of due process of law guaranteed under the Fourteenth Amendment of the United States Constitution."

For example, defense counsel asked: "So you don't remember any of the other individual occasions, you just know that it kept happening?" J. M. replied: "Yeah. It just always happened and it would happen any time. I never really focused on remembering what time." She testified that in October 2000, an instance that stood out from the others, appellant was particularly violent when she resisted having sexual intercourse with him, grabbing her by the hair and banging her repeatedly into the floor and wall. Asked how many times they had intercourse in September, she answered, "It was always the same. It was always whenever he wanted to. There was no number of times." Asked if she recalled anything about what occurred in August, she answered, "No. They were all just the same. They were always the same, just some were more violent than others. That's it."

Appellant argues that "generic testimony" of this kind is only proper in "course of conduct offenses" such as in section 288.5,[2] and since appellant was charged instead with rape under section 261 the testimony was inadequate to support his conviction. As appellant correctly points out, section 288.5 was passed by the Legislature in 1989 in response to the holding in *People v. Van Hoek* (1988) 200 Cal.App.3d 811 [246 Cal.Rptr. 352], in

---

[2]Section 288.5 provides: "(a) Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years. [¶] (b) To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number. [¶] (c) No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative. A defendant may be charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim." J. M. was 15 and 16 years old during the relevant time period.

which the defendant was convicted in the trial court of multiple counts of lewd and lascivious conduct (§ 288, subd. (a))[3] and unlawful sexual intercourse (§ 261.5)[4] with his daughter from the time she was nine years old until she was 14; she was 15 years old at the time of trial. The conviction was reversed based on the appellate court's finding that the child victim's failure to give specific testimony linking any instance of abuse to a particular date or event violated the defendant's right to due process, because it made it impossible for the jury to agree upon any specific act or acts to support a conviction. According to the court, it denied him a fair opportunity to provide an alibi defense as to any particular conduct, or to challenge the specifics of any act to undermine the victim's credibility as to details. (*People v. Van Hoek, supra,* 200 Cal.App.3d at pp. 814-817; see *People v. Jones* (1990) 51 Cal.3d 294, 309-310 [270 Cal.Rptr. 611, 792 P.2d 643].)

Appellant contends that in enacting section 288.5 and "creating a new 'course of conduct' offense, the Legislature effectively eliminated the due process and unanimity problems identified by the court in *Van Hoek.*" Appellant is incorrect. In *People v. Jones, supra,* 51 Cal.3d 294,[5] the California Supreme Court, discussing the reasoning behind *Van Hoek* and the passage of section 288.5, noted otherwise: "The new section [288.5] recites that the jury need not unanimously agree 'on which acts constitute the requisite number' as long as the jury unanimously agrees that at least three acts occurred within the three-month period. Moreover, the section does not contain any requirement of particularity or specificity of the victim's testimony. Thus, if the constitutional impediments discerned by *Van Hoek,* et al., are valid, this statute may face similar due process challenges. In other words, passage of this legislation does not render moot our present discussion." (*Jones, supra,* at pp. 310-311.) Thus, we reject appellant's suggestion that generic testimony is acceptable only when a defendant is charged under a "course of conduct" statute but not otherwise. That is, appellant cannot say that J. M.'s testimony, to the extent that it was generic, was necessarily

[3]Section 288, subdivision (a) provides: "Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three; six, or eight years."

[4]Section 261.5, subdivision (a) provides: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor. For the purposes of this section, a 'minor' is a person under the age of 18 years and an 'adult' is a person who is at least 18 years of age."

[5]The defendant in *Jones* was convicted of numerous counts of committing lewd and lascivious acts on four children under the age of 14 (§ 288, subd. (a)). As noted previously, J. M. was 15 and 16 years old during the relevant time period and thus section 288, subdivision (a) was inapplicable.

inadequate to support his conviction because he was charged with rape under section 261 rather than with violating a course of conduct statute such as section 288.5. The point is that course of conduct statutes such as section 288.5 raise due process questions.

As explained in *People v. Jones, supra*, 51 Cal.3d 294, "Child molestation cases frequently involve difficult, even paradoxical, proof problems. A young victim . . . , assertedly molested over a substantial period by a parent or other adult residing in his home, may have no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents. (*Indeed, even a mature victim might understandably be hard pressed to separate particular incidents of repetitive molestations by time, place or circumstance.* See *People* v. *Luna* (1988) 204 Cal.App.3d 726, 748 [250 Cal.Rptr. 878].) Accordingly, any constitutional principles or evidentiary standards we develop should attempt to assure that the resident child molester is not immunized from substantial criminal liability merely because he has repeatedly molested his victim over an extended period of time. [¶] On the other hand, the defendant has a due process right to fair notice of the charges against him and reasonable opportunity to defend against those charges. In addition, the defendant is entitled to a verdict in which all 12 jurors concur, beyond a reasonable doubt, as to each count charged. Finally, the defendant's conviction can be sustained only if supported by substantial evidence." (*People v. Jones, supra*, 51 Cal.3d at p. 305, italics added.)

After discussing at length the issues raised in *Van Hoek* regarding generic testimony of ongoing molestation, including insufficiency of evidence concerns, and due process concerns affecting a defendant's right to present a defense, the *Jones* court categorically "decline[d] to follow the thesis of *People v. Van Hoek* . . . and its progeny that generic testimony deprives the defendant of a due process right to defend against the charges against him." (*People v. Jones, supra*, 51 Cal.3d at pp. 320-321.)

As to the purported insufficiency of "generic testimony" evidence, the *Jones* court noted: "It must be remembered that even generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific*, albeit undifferentiated, incidents, *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction." (*People v. Jones, supra*, 51 Cal.3d at p. 314.) The *Jones* court concluded that, to constitute substantial evidence to support a conviction, "The victim, of course, must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct

(e.g., lewd conduct, intercourse, oral copulation, or sodomy). Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping'). Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Id.* at p. 316.) Where a victim specifies the type of conduct involved and its frequency, and confirms that such conduct occurred during the limitation period, "[n]othing more is required to establish the substantiality of the victim's testimony in child molestation cases." (*Ibid.*)

The *Jones* court also rejected the argument that generic testimony of molestation deprives a defendant of the right to present a defense to the charges. It held: "[G]eneric child molestation charges by no means deprive the defendant of a reasonable opportunity to defend. Initially, of course, the defendant has the option of taking the witness stand and directly denying any wrongdoing. If credible, his testimony should prevail over the unspecific assertions of his young accuser. In some cases, the very nonspecificity of the child's testimony, especially if uncorroborated, may offer defense counsel fertile field for challenging the child's credibility. [Citation.]" (*People v. Jones, supra*, 51 Cal.3d at p. 320.) In addition, the defendant may cross-examine the child and supporting witnesses, and may be permitted to introduce expert character evidence, based on standardized tests and personal interviews, to the effect that his personality profile does not include a capacity for deviant behavior against children. (*Ibid.*) As occurred here, "besides merely denying the charges, the defendant may introduce evidence outlining the victim's past fabrications . . . , as well as expert testimony refuting or contradicting any physical evidence of molestation." (*Ibid.*) Finally, "the defendant has a variety of procedural due process remedies available to obtain relief from unwarranted prosecution or punishment, including demurrers (Pen. Code, § 1002 et seq.), pretrial motions to set aside the information or indictment (*id.*, § 995), and motions for judgment of acquittal (*id.*, § 1181.1), modification of verdict (*id.*, § 1181.1) or new trial (*ibid.*)." (*People v. Jones, supra*, 51 Cal.3d at p. 320.)

In summary, the *Jones* court held that, in child molestation cases, as long as the victim specifies the type of conduct involved, its frequency, and that the conduct occurred during the limitation period, nothing more is required to establish the substantiality of the victim's testimony. Further, the

prosecution of child molestation charges based on generic testimony does not deprive the defendant of a due process right to defend against the charges against him. (*People v. Jones, supra,* 51 Cal.3d at pp. 316, 318.)

Concededly, the present case involves crimes committed against a victim when she was 15 and 16 years old, and thus does not fall squarely within the factual parameters of the *Jones* case, which involved molestation of children under the age of 14. However, we conclude that the reasoning and conclusions reached by the court in *Jones* are fully applicable under the circumstances present here. J. M. lived with appellant from birth, and was molested by appellant from the time she was six years old; he continuously forced sexual intercourse on her from the time she was 12 until she was 16, until he was arrested. Appellant may aptly be described as a "resident child molester." In rejecting appellant's contention that the use of generic testimony to convict him violated his due process rights, we need not reach far beyond the holding in *Jones*. The *Jones* court acknowledged that "even a mature victim might understandably be hard pressed to separate particular incidents of repetitive molestations by time, place or circumstance." (*People v. Jones, supra,* 51 Cal.3d at p. 305.) The fact J. M. was 15 and 16 at the time of the crimes involved here makes little difference with regard to her inability to differentiate among the continual rapes perpetrated by defendant.

██ Appellant further argues that the purported due process violation here was exacerbated by the trial court's failure to give a juror unanimity instruction as it was required to do sua sponte, relying on the so-called "either/or" cases requiring that either the prosecution must elect the specific act relied upon to prove the charge or the jury must be instructed that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act. Appellant asserts that where the prosecution alleges numerous acts, each act is a separate offense, and there are many, many more acts presented by the testimony than charged in the information, a unanimity instruction is required. (See, e.g., *People v. Madden* (1981) 116 Cal.App.3d 212, 216 [171 Cal.Rptr. 897].) Appellant argues that the resulting error was structural and requires reversal without regard to the existence of prejudice.

The Supreme Court's opinion in *Jones* provides guidance in addressing appellant's contention. It held: "As for the necessity of a unanimous jury on specific charges, we acknowledge that the requirement of unanimity in criminal cases is of constitutional origin. (See Cal. Const., art. I, § 16.) The standard unanimity instruction codifies that principle. (See CALJIC No. 4.71.5.) But we reject the contention that jury unanimity is necessarily unattainable where testimony regarding repeated identical offenses is presented in child molestation cases. In such cases, although the jury may not

be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described. [¶] [E]ven generic testimony describes a repeated series of *specific*, though indistinguishable, acts of molestation. (*Ante*, pp. 313-314.) The unanimity instruction assists in focusing the jury's attention on each such act related by the victim and charged by the People. We see no constitutional impediment to allowing a jury, *so instructed*, to find a defendant guilty of more than one indistinguishable act, providing the three minimum prerequisites heretofore discussed are satisfied." (*People v. Jones, supra*, 51 Cal.3d at p. 321, italics added.) Again, the three prerequisites are that the victim describe the kind of acts committed, the number of acts committed with sufficient certainty to support each of the counts alleged, and the general time period in which these acts occurred.

"In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given. . . . But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, *the jury should be given a modified unanimity instruction* which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim. [¶] As pointed out recently in *People* v. *Moore* [(1989)] 211 Cal.App.3d [1400,] 1414 [260 Cal.Rptr. 134], because credibility is usually the 'true issue' in these cases, 'the jury either will believe the child's testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict [citation] and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act [citations].' "[6] (*People v. Jones, supra*, 51 Cal.3d at pp. 321-322, italics added.)

 Thus, based on the foregoing discussion in *Jones,* we conclude that the trial court should have instructed the jury using a modified version of CALJIC No. 4.71.5, and its failure to do so constituted error. Currently, the Courts of Appeal are split concerning the proper standard for reviewing prejudice for failure to give a unanimity instruction. (*People v. Vargas*

---

[6]In *Jones*, unlike the case before us, the trial court had instructed the jury using CALJIC No. 4.71.5, that "in order to find [the defendant] guilty the prosecution must prove beyond a reasonable doubt, and the jury must unanimously agree on, 'the commission of the same specific act or acts constituting said crime within the time period alleged.' " (*People v. Jones, supra*, 51 Cal.3d at p. 300.)

(2001) 91 Cal.App.4th 506, 561 [110 Cal.Rptr.2d 210].) Some cases hold that the ensuing conviction must be overturned unless the constitutional error can be demonstrated to be harmless beyond a reasonable doubt, applying the standard from *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]. (See *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1536 [70 Cal.Rptr.2d 878].) Other cases find appropriate the test in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (See *People v. Vargas, supra,* 91 Cal.App.4th 506, 562.)

Because the Supreme Court has not resolved the split in authority, we analyze the error under both the *Chapman* and *Watson* standards. We find the error harmless beyond a reasonable doubt under *Chapman*; and under *Watson,* we find it is not reasonably probable that appellant would have achieved a more favorable result if the court had given the unanimity instruction.

During closing argument, the prosecutor explained to the jury that the case concerned the period of time appellant and J. M. were in California: "Now when she was around 15 years old in August of 1999 they moved to Los Angeles. And it's those 15 months between August of 1999 and November 1st of 2000 that is our issue here in this case. We don't charge crimes that happened in other states. So we have 15 counts. A rather conservative number. One count for each month that [J. M.] suffered rapes at the hands of the defendant, her father."

The prosecutor continued: "And again 15 counts is a very conservative number. [J. M.] told you this happened on average twice a week every week every month between August of 1999 and November 1st of the year 2000. I asked her did a month ever go by without a rape? No. Did a week ever go by without a rape? No."

Thus, the number of counts brought against appellant and the time frame at issue were clearly explained to the jury, and the prosecutor pointed to the evidence which amply supported the number of counts. It was not a random number, but rather was one that was tied to the time frame involved and was more than adequately supported by J. M.'s unequivocal testimony that a week never went by without a rape occurring. There could be no confusion in the jury's mind that they were being asked to decide whether appellant raped J. M. 15 times over the period from August 1999 to November 2000.

In addition, the trial court instructed the jury pursuant to CALJIC No. 17.02: "Each count charges a distinct crime. You must decide each count

separately. The defendant may be found guilty or not guilty of the crimes charged or any—let me read that sentence over. The defendant may be found guilty or not guilty of any or all of the crimes charged. Your finding as to each count must be stated in a separate verdict." The jury was further instructed: "In order to reach verdicts, all 12 jurors must agree to the decision. As soon as you have agreed upon a verdict so that when polled each may state truthfully that the verdict expresses his or her vote, have them dated and signed by your foreperson and then return with them to this courtroom." The jury returned separate verdicts as to each of the 15 counts, finding appellant guilty of the crime of forcible rape as to each count.

In sum, J. M.'s testimony reflected the ongoing, repetitive nature of the rapes which had blurred together in her mind, except for specific occasions such as her birthday, the week after her abortion, the time in October 2000 when he was particularly violent, and the day when she was examined for evidence of rape and appellant's sperm was found inside her body. Appellant's only defense was to deny that he ever had sexual intercourse with his daughter. Based on the evidence presented and the guidance given by the court's instructions and the prosecutor's comments, we are convinced beyond a reasonable doubt the jury unanimously agreed that the charged crimes took place in the number and manner described even without the submission of CALJIC No. 4.71.5.

In addition, we obviously conclude no miscarriage of justice occurred here. It is not reasonably probable that a result more favorable to appellant would have been reached in the absence of the instructional error because there is no reasonable possibility the jury failed to unanimously agree that appellant committed each specific act for which he was convicted.

### DISPOSITION

The judgment is affirmed.

Epstein, J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 11, 2003.