Filed 4/12/16  P. v. Soliz CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> VINCENT SOLIZ, <br><br>     Defendant and Appellant. | D069224 <br><br><br> (Super. Ct. No. RIF1201738) |

APPEAL from a judgment of the Superior Court of Riverside County, Mac R. Fisher, Judge.  Affirmed.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Vincent Soliz of seven counts of various sex offenses committed against four of his young female cousins, Violet, D., Jazmin, and Aaliyah, as well as J.,

another young member of their extended family.  (Pen. Code,[1] § 261, subd. (a)(2); § 220; § 288, subd. (a); § 243.4, subd. (a); § 243.4, subd. (e)(1).)  Soliz was convicted of or admitted to various enhancement allegations, and he received an aggregate state prison term of 115 years to life, consisting of a determinate sentence of 25 years and an indeterminate sentence of 90 years to life.

On appeal, Soliz first contends prejudicial instructional error occurred when the trial court gave a unanimity instruction for evaluating the evidence on counts 4 and 6 regarding Violet (forcible rape, § 261, subd. (a)(2); misdemeanor sexual battery, § 243.4, subd. (e)(1)).  The jury was instructed in terms of CALCRIM No. 3501 (Unanimity: When Generic Testimony of Offense Presented).  The information alleged the rape offense was committed in April 2011 in Riverside County, and the sexual battery there during a one-year period, beginning April 2011.  The evidence relating to those counts described several acts allegedly committed during time periods he and Violet each spent in two different counties, Orange and Riverside.  Under these circumstances, Soliz argues the trial court came under a sua sponte duty to tailor the instruction further or to give different unanimity instructions that he requested (CALCRIM Nos. 3500, 3502; see fn. 2, *post*).  Soliz claims the instruction interfered with his constitutional right to a verdict in which all jurors agreed upon the counts as charged, because these jurors were erroneously given the opportunity to amalgamate the evidence of multiple offenses that were not so charged.  (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534 (*Melhado*).)

---

[1]     All further statutory references are to the Penal Code.  The five victims testified at trial under their first names and we identify them accordingly.

2

Further, Soliz argues the lengthy sentence imposed on him, 115 years to life, violated his constitutional protections against cruel and unusual punishment. (*In re Alva* (2004) 33 Cal.4th 254, 291; *People v. Hicks* (1993) 6 Cal.4th 784, 797 [dis. opn. of Mosk, J.] (*Hicks*).) We find no instructional or legal error and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. Outline of Charges

In his arguments on appeal, Soliz does not directly challenge the sufficiency of the evidence to support his convictions or the true findings on multiple victims (3 counts). We therefore set forth detailed facts only as to Violet, who was 16 to 19 years of age at the relevant times (2009-2012). We generally describe the charges and evidence regarding his conduct toward the other young female relatives, since the record underlying his convictions of sex offenses against them is relevant only as to his appellate claim that his sentence amounts to cruel and unusual punishment.

The charges arose out of a set of family relationships in which Roxanne A. is the mother of Violet, Jazmin and D. Violet, who was born in 1992, is the oldest of the female cousins, and about the same age as her cousin Soliz. Roxanne A.'s sister, Lanora (Lori) Soliz, is Soliz's mother, and Roxanne A. is his aunt. Soliz lived with or visited all of these relatives at different family households.

Violet, D., and Jazmin have a half-sister J. (J. has the same father but a different mother). J. (age 11 in 2011) spent time with her half-sisters (who were then ages 19, 15 and 11, respectively), as part of the extended family households. Aaliyah (then age 14) is the child of Roxanne A.'s brother Rudy, and is thus a cousin of the three sisters.

3

On April 20, 2012, Violet, J., D., and Jazmin together went to the police in Beaumont, Riverside County, to report that Soliz had molested each of them. At the preliminary hearing, testimony from the original police investigator, Corporal Scot Davis of the Beaumont Police Department, was presented. He reported on Violet's descriptions to him of several Orange County incidents in 2009 and 2010, when Soliz forcibly raped her. She also told him and a district attorney's investigator, Susan Zappia, about another incident of rape occurring at her mother's house in Beaumont, Riverside County, in 2011 or late 2010.

### B. Pretrial and Trial Proceedings: Venue

Certain procedural background from one of Soliz's motions in limine relates to his instructional claims about jury unanimity. Some of the incidents Violet described to police and to the jury occurred in Orange County and others in Riverside County. The Riverside County information alleged one count of rape of Violet (count 4) and one count of sexual battery of her (count 6). Soliz sought an order dismissing those two counts for lack of jurisdiction.

At the hearing, the trial court denied the defense request on the basis it had just received a letter from the District Attorney's office in Orange County, deferring jurisdiction to the Riverside office. (§ 784.7, subd. (a).) Counsel for Soliz agreed that this resolved his jurisdictional concerns. The court denied his motion to dismiss those counts. The court inquired whether the prosecutor intended to seek amendment of the information, since it still referred to offenses committed in "Riverside County." The prosecutor did not believe it was necessary at that time, but noted that she might request

4

leave to amend once Violet had testified. No such amendment was requested or made. On appeal, Soliz is arguing that this resolution of the jurisdictional issue, which he does not challenge, did not obviate the instructional problems that he identifies.

In Violet's trial testimony, she stated that in 2009, she was 16 years old and living in Fullerton in Orange County. She had just had a baby with her boyfriend, and previously, while she was pregnant, Soliz wrote her and told her not to have the baby and to wait and have his instead. One night in 2009, when Soliz was staying in the garage at the same house, he came into Violet's bedroom while she was sleeping, pinned her to the bed, pulled down her pants, and although she resisted, got his penis into her vagina. When her boyfriend came to the window, Soliz got off and left.

Violet testified that in late 2010, while living in Brea in Orange County, she learned that Soliz always carried a knife. He once held it to her throat in the car there, during an argument they had about changing the music that was playing. She was afraid of him. One night in Brea, she was asleep in her room when Soliz came into the room, got into her bed, and forced her to have sex with him. Although she said no and tried to fight him off, nothing worked. A friend who was sleeping in the living room heard her and opened the door, and Soliz jumped off of her.

In 2011 or late 2010, Soliz was living at Violet's mother's house in Beaumont, Riverside County. Violet did not live there but visited sometimes. She tried to forget that Soliz had forced her to have sex. Sometimes Jazmin asked Violet to give Soliz a ride to come over to the house, and Violet sometimes did so, since Jazmin did not know she had a problem and Violet did not want her to know that. On about five occasions

5

between 2009 and 2011, Violet woke up and found Soliz in her room trying to touch her. At other times, he grabbed parts of her body and harassed her in the bathroom or other rooms.

One night in 2011 or late 2010, Violet was asleep in the living room in the Beaumont house and woke up when Soliz threw himself on her, held her down, pulled down her pants, and started having sex with her. Another man who was sleeping on the living room floor woke up, and Soliz jumped off of her. Violet first testified she did not remember if Soliz's penis went inside her vagina that time, but later told the jury that it did. When Violet told her aunt and uncle about what was happening to her, no one listened.

In 2011, Violet noticed that Soliz seemed to be spending more time with her sister D., asking her to come into his room, where there was no TV but just a bed. D. and Violet did not talk about Soliz. Because of her concerns about him, Violet talked to J. about them in April 2012, and J. began to cry, telling Violet that Soliz had been doing things to her sexually. According to J., she, Aaliyah, and Jazmin were keeping it secret from Violet and others that Soliz had been doing sexual things to all three of them. Violet told her older female relatives, including her stepmother Desiree, about it. A few days later, Violet, J., D., and Jazmin went to the police together and reported his conduct.

At Soliz's trial, the jury heard an audiotape of Violet's interview with Corporal Davis of the Beaumont Police Department, in which she told him about Soliz forcing her to submit to sexual intercourse "about two times," in Orange County in 2009 and 2010,

6

and in Beaumont. Davis testified about his interviews with Jazmin. Testimony was taken from the other female cousins and half-sister, as well as other relatives.

In Soliz's defense case, his mother, Lori Soliz, testified that shortly before her nieces went to the police in April 2012, the younger ones had not been acting uncomfortable around him during family gatherings. She did not see him touch any of them in any sexually inappropriate way. As his mother, she saw that Violet's mother had recently been favoring him, and that Violet became jealous about that relationship. Violet's great-aunt Alice Garcia testified that Violet admitted to her she had been messing around with Soliz. Violet did not like Alice and felt she was evil.

During its deliberations, the jury requested that Violet's police interview be replayed for it, and it also made other inquiries about D.'s evidence. The jury requested that Violet's trial testimony be read back to them. Following instructions, the jury found Soliz guilty on all seven charged counts and enhancements. As prior offenses, Solis admitted to a strike prior in 2008 (assault with a deadly weapon, §§ 245, subd. (a)(1)), 667, subds. (b)-(i), 1170.12). He admitted to a serious felony prior (§ 667, subd. (a)(1)), and a prison prior (§ 667.5, subd. (b)).

## C. Sentencing

On May 9, 2014, Soliz was sentenced to a determinate term, consisting of an upper term sentence on count 3, doubled (12 years for assault with the intent to commit oral copulation of D.; § 220). The court imposed a consecutive upper term sentence on count 5, doubled (8 years for sexual battery with restraint of Aaliyah; § 243.4, subd. (a)).

7

The court imposed a consecutive five-year term for the serious felony enhancement, section 667.61, subdivision (e)(4), which alleged there were multiple victims.

The indeterminate sentence consisted of two consecutive 30-years-to-life terms on counts 1 and 2 (lewd acts upon J. and Jazmin, both children under the age of 14; § 288, subd. (a)). Each of these consisted of a 15-years-to-life "one strike law" term, doubled (§ 667.61, subd. (b)). Additionally, a third consecutive 30-years-to-life term was imposed on count 4 (forcible rape of Violet; § 261, subd. (a)(2)). Concurrent jail sentences were imposed for the two misdemeanor battery counts. Soliz appeals.

## DISCUSSION

## I

### *DUTY TO INSTRUCT ON UNANIMITY*

### A. Authority

An independent or de novo standard of review applies when an appellate court assesses whether jury instructions as given correctly stated the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218; § 1259 [review afforded on questions of law affecting substantial rights, even without objection].) This court considers "whether it is reasonably likely that the trial court's instructions caused the jury to misapply the law. [Citations.] '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' " (*People v. Carrington* (2009) 47 Cal.4th 145, 192.)

"[E]ven in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's

8

understanding of the case. [Citation.] 'A trial court's duty to instruct, sua sponte, on particular defenses arises " 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " ' " (*People v. Martinez* (2010) 47 Cal.4th 911, 953.)

Jury unanimity in criminal cases is a requirement of constitutional origin. (*People v. Jones* (1990) 51 Cal.3d 294, 321 (*Jones*); Cal. Const., art. I, § 16.) Unanimity instructions are designed "to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done something sufficient to convict on one count." (*People v. Deletto* (1983) 147 Cal.App.3d 458, 472; italics omitted.)

"When an accusatory pleading charges the defendant with a single criminal act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act. The duty to instruct on unanimity when no election has been made rests upon the court sua sponte." (*Melhado, supra,* 60 Cal.App.4th 1529, 1534.)

Alternate approaches on instructions have been developed to meet jury unanimity requirements, where the evidence identifies repeated identical offenses. Where such evidence of a generic nature about molestations is presented, jury unanimity instructional

9

rules have been refined. (*Jones, supra*, 51 Cal.3d at pp. 321-322 [concerning child molestation].) These same principles apply to testimony from teenagers or young adults, such as Violet, about repeated acts of molestation over a period of time. (*People v. Matute* (2002) 103 Cal.App.4th 1437, 1446-1449 (*Matute*); *Jones*, *supra*, 51 Cal.3d at p. 305 ["even a mature victim might understandably be hard pressed to separate particular incidents of repetitive molestations by time, place or circumstance"].) "In such cases, although the jury may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described." (*Id.* at p. 321.) "[E]ven generic testimony describes a repeated series of specific, though indistinguishable, acts of molestation. [Citation.] The unanimity instruction assists in focusing the jury's attention on each such act related by the victim and charged by the People. We see no constitutional impediment to allowing a jury, so instructed, to find a defendant guilty of more than one indistinguishable act, providing . . . three minimum prerequisites . . . are satisfied." (*Id.* at p. 321, italics omitted.)

These three prerequisites identified in *Jones, supra*, 51 Cal.3d at page 316 permit a jury to consider "generic evidence describing (1) the kind of acts committed, (2) the number of acts committed with sufficient certainty to support the alleged counts, and (3) the general time period in which the acts occurred." (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 556-557 (*Fernandez*).) This approach satisfies the requirement that the jury's attention must be drawn to each act related by the victim and charged by the People. (*Jones, supra*, at p. 321.)

Under the terms of CALCRIM No. 3500 and No. 3501, a jury may be able to reach agreement as to the acts constituting each charged offense. (*Fernandez*, *supra*, 216 Cal.App.4th 540, 555-556, 558.) "But unanimity may also be found under CALCRIM No. 3501 if the jury agrees 'that the People have proved that the defendant committed all the acts alleged to have occurred during this time period [and have proved that the defendant committed at least the number of offenses charged].' " (*Fernandez*, *supra*, at p. 556.)

## B.  Trial Proceedings

As noted, Soliz's motion to dismiss for improper venue was denied, once Orange County officials deferred their jurisdiction to prosecute to the Riverside office.  No further amendment was made after the court denied the dismissal request for counts 4 and 6.  Following testimony, the prosecutor did not make an election of one specified offense, among the various 2009 through 2011 acts described by Violet.  Based on her testimony about events occurring over more than two years, in three separate locations in two counties, defense counsel requested that the trial court give CALCRIM No. 3500 (Unanimity) and CALCRIM No. 3502 (Unanimity:  When Prosecution Elects One Act Among Many).[2]

_____

[2]    The pattern instruction CALCRIM No. 3502 provides that the jury may not find the defendant guilty of the charged offense unless each juror agrees "that the People have proved specifically that the defendant committed that offense [on] _____<insert date or other description of event relied on >. [and/or] [Evidence that the defendant may have committed the alleged offense (on another day/ [or] in another manner) is not sufficient for you to find (him/her) guilty of the offense charged.]"

Instead, the trial court gave the unanimity instruction requested by the prosecutor, CALCRIM No. 3501 (Unanimity: When Generic Testimony of Offense Presented). This instruction explained to the jury that as to Violet, Soliz was charged with the offense of section 261, subdivision (a)(2) in count 4 "sometime during the period of April 1, 2011 to April 30, 2011." He was also charged with a section 243.4, subdivision (e)(1) battery offense in count 6, "sometime during the period of April 2011 . . . ."[3]

The unanimity instruction continued, "The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless: [¶] (1) You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense; or [¶] (2) You all agree that the People have proved the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged." The court next informed the jury: "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one."

In closing argument, the prosecutor noted, "you all heard about three different times that Violet describe[d] being raped by [Soliz]." Violet had described the incidents

---

3    In giving the count 6 instruction, the trial court omitted the timing allegation in the information that it was committed "on or about April 2011, *through and including April 2012*." In his brief, Soliz makes note of this discrepancy but does not separately argue error occurred in that respect. We examine the instructions as a whole, and they included CALCRIM No. 207, which states that the People were not required to prove that an offense took place exactly on the day alleged, "but only that it happened reasonably close to that day."

12

as to date, location and activity, and how Soliz consistently ignored her objections. The prosecutor explained that there were not three counts of rape charged, but only one, and the jury needed to discuss the testimony and agree on one in particular that they believed had been proven. The prosecutor also told the jury that after deciding on which of the rapes to use for count 4, they could use either of the other two rapes, or any other incident Violet testified about that showed a sexual battery, as the basis for the offense charged in count 6.

Closing argument by defense counsel included claims that Violet must have been exaggerating, collaborating with the others, or fabricating her testimony, for her own reasons of jealousy or dishonesty. During rebuttal argument, the prosecutor argued the evidence showed that rapes had occurred in both Riverside County or Orange County, and thus the jury simply had to "pick one of those three" to find Soliz guilty as charged in count 4.

## C. Analysis

Unanimity of a jury verdict requires agreement "that the defendant is guilty of a specific crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*); italics omitted.) In *Russo*, the Supreme Court qualified that statement with the citation, "but see *People v. Jones* (1990) 51 Cal.3d 294." (*Russo*, *supra*, at p. 1132.) The Supreme Court thus recognized that there are different types of cases, some involving continuous criminal acts, as here, compared to

13

others that involve a set of factually discrete offenses. (*Ibid*.) As an example of the latter, the Supreme Court cited to *People v. Diedrich* (1982) 31 Cal.3d 263, 280-283, in which "the defendant was convicted of a single count of bribery, but the evidence showed two discrete bribes. We found the absence of a unanimity instruction reversible error because without it, some of the jurors may have believed the defendant guilty of one of the acts of bribery while other jurors believed him guilty of the other, resulting in no unanimous verdict that he was guilty of any specific bribe." (*Russo, supra*, at p. 1132.)

Consistent with the reasoning in *Jones, supra*, 51 Cal.3d 294, 321-322, CALCRIM No. 3501 is a modified unanimity instruction that accommodates situations in which a continuing series of offending conduct is charged, and it allows a conviction either if the jurors unanimously agree upon specific acts, or if the jury unanimously agrees the defendant committed all the acts described by the victim. (*Matute, supra*, 103 Cal.App.4th 1437, 1446-1449.) This instructional approach includes safeguards for the defendant, because the instruction is not given unless the victim has substantially described the kind of acts committed, the number of acts committed with sufficient certainty to support each of the counts alleged, and the general time period in which these acts occurred. (*Jones, supra*, at pp. 316, 321-322.)

Soliz argues his case did not meet these standards, and sua sponte, the trial court should have further refined the unanimity instruction for accuracy and completeness. He contends the multiple locations and time frames described in Violet's testimony led to a danger of jury confusion, in part because her testimony was stronger on some incidents and weaker on others (e.g., the force used or the extent of penetration in a given incident).

14

She testified about events taking place from 2009 into early 2011, but the information only charged forcible rape on or about the month of April 2011.  Likewise, sexual battery was charged as taking place over a year's period (April 2011-2012), but that timeframe was left out of the instruction, as given.  This omission was not brought to the trial court's attention, and Soliz did not object to the admission of Violet's testimony covering several years of interactions.

It is important to note that Soliz is not arguing that there were any statute of limitations problems with the admissibility of the testimony.  (§ 801.1 [10-year limitations period]; see fn. 3, *ante* [CALCRIM No. 207, addressing proof of an offense "reasonably close" in time to the days alleged].)  Soliz does not claim any lack of jurisdiction in the Riverside trial court to adjudicate the Orange County charges.  (*People v. Posey*, *supra*, 32 Cal.4th 193, 215 [venue is a question of law for the trial court].)  Without claiming that any evidence was presented that should have been excluded as a matter of law, he frames his arguments in terms of instructional error.

Several factors persuade us that the instructions given were adequate.  First, the admitted lack of amendment to conform to proof on the timing and location of the charged offense did not prejudice Soliz.  A trial court may permit amendment of the accusatory pleading at any stage of the proceeding, up through the close of a criminal trial, so long as the defendant's substantial rights are not prejudiced.  (*Fernandez*, *supra*, 216 Cal.App.4th 540, 554.)  Although it might have been the better practice to accomplish such an amendment, and the trial court was well aware of the problem, the prosecutor disregarded it.  In any case, the relevant issue should be whether the defendant

15

had the means to obtain fair notice of the nature and cause of the charges against him. (*Jones, supra*, 51 Cal.3d at pp. 317-318.) Such notice may be gained through the information filed, and from the preliminary examination and pretrial discovery conducted about the nature of the charges to be met. (*Fernandez, supra*, at pp. 554-555.)

At the preliminary hearing, the investigators presented evidence about both sets of allegations. All the evidence from both Orange and Riverside Counties went to the jury, without objections. Soliz cannot fairly claim that he lacked notice that the prosecution was attempting to prove each of these counts by placing his entire course of conduct toward Violet before the jury.

Further, the nature of the prosecutor's closing argument did not create a new unanimity problem or exacerbate an existing one, as Soliz argues. Violet's testimony at trial was somewhat generic in nature, and in this type of case, her credibility was a material issue. (*Jones, supra*, 51 Cal.3d at p. 322.) It was not inaccurate for the prosecutor to explain that there was one count of rape, and the jury needed to discuss the testimony and agree on one in particular that they believed had been proved. The jury heard about the ongoing family relationships, Violet's fear of Soliz, and his ability to have physical access to her at different households in different places. Although the jury requested read back of Violet's testimony, it also re-examined portions of D.'s testimony, which suggests that it was being thorough rather than encountering any undue problems about the proof presented on the charges about Violet. Nothing in the evidence or argument placed the trial court under any sua sponte duty to instruct the jury that it could

16

only consider the Riverside County acts, during its deliberations on each single count charged about Violet.

Jury unanimity rules, as refined in the context of alleged sexual molestations taking place over a long period, were not violated here. The jury had to agree unanimously whether Soliz was guilty of these two specific counts about Violet. The manner of charging and the way the evidence was presented did not operate to impose a requirement on the prosecution to elect among the crimes described in the testimony. CALCRIM No. 3501 properly allowed the jurors to decide that they agreed upon one specific act, or alternatively, that the defendant committed all the acts described by the victim. (*Jones, supra*, 51 Cal.3d at pp. 321-322; *Fernandez*, *supra*, 216 Cal.App.4th at p. 558.) Also, the trial court did not have a duty to require the prosecution to elect which specific acts were being relied upon to prove that rape and sexual battery occurred, or to instruct further or more specifically about the unanimity requirement. (*Melhado, supra,* 60 Cal.App.4th 1529, 1534; *Jones*, *supra*, at p. 321.) Since the instruction as given was adequate to educate the jury that it must agree on the same criminal act, as to each of the counts toward Violet, we need not evaluate any harmless error arguments.

II

*CRUEL AND UNUSUAL PUNISHMENT CLAIMS*

Soliz was sentenced to an aggregate state prison term of 115 years to life, consisting of a determinate sentence of 25 years, based on his convictions of assault with the intent to commit oral copulation of D. (§ 220) and sexual battery with restraint of

17

Aaliyah (§ 243.4, subd. (a)). The term included a serious felony enhancement for multiple victims. (§ 667.61, subdivision (e)(4).)

The indeterminate sentence of 90 years to life reflected consecutive terms for the convictions of lewd acts upon J. and Jazmin (§ 288, subd. (a)) and forcible rape of Violet (§ 261, subd. (a)(2)). The sentence imposed for the current convictions also reflected statutory enhancements for recidivism. As prior offenses, Solis admitted to a strike prior in 2008 (assault with a deadly weapon, §§ 245, subd. (a)(1), 667, subds. (b)-(i), 1170.12). He admitted to a serious felony prior (§ 667, subd. (a)(1)), and a prison prior (§ 667.5, subd. (b)).

On appeal, Soliz argues this lengthy sentence operated as a de facto life sentence, in violation of federal constitutional protections against cruel and unusual punishment. (U.S. Const., Eighth Amendment; *Robinson v. California* (1962) 370 U.S. 660, 666-667.) He also relies on article I, section 17 of the California Constitution, in support of this claim of disproportionate punishment. (*People v. Dillon* (1983) 34 Cal.3d 441, 477-478; *In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*); *In re Alva, supra,* 33 Cal.4th 254, 291; *People v. Lucero* (2000) 23 Cal.4th 692, 739.) To show a sentence is relatively cruel or unusual under that disproportionality approach, comparisons are required of "(1) the nature of the offense and the defendant's background, (2) the punishment for more serious offenses, or (3) punishment for similar offenses in other jurisdictions." (*In re Nunez* (2009) 173 Cal.App.4th 709, 725; *People v. Carmony* (2005) 127 Cal.App.4th 1066, 1085.)

18

Soliz argues his punishment is excessive as a matter of law, particularly in comparison to section 190.2, subdivision (a), which enumerates 22 special circumstances as aggravation factors for the heinous offense of murder. (*Solem v. Helm* (1983) 463 U.S. 277, 291-292 ["If more serious crimes are subject to the same penalty . . . that is some indication that the punishment at issue may be excessive."].) However, he does not provide other information on comparative sentences for similar crimes in this or any other jurisdictions. Alternatively, he contends that the sentence runs afoul of the federal constitutional guarantee of due process, because in a murder case, the trial court would have had to meet the extensive procedural and substantive requirements of section 190.2. (See *Whitley v. Albers* (1986) 475 U.S. 312, 327.)

A de novo standard of review is applied to the questions of law presented, on whether a punishment is objectively cruel or unusual. (*People v. Em* (2009) 171 Cal.App.4th 964, 971.) Soliz's arguments are based primarily on Justice Mosk's dissenting opinion in *Hicks*, *supra*, 6 Cal.4th 784, 797. There Justice Mosk criticized sentences, such as the one in this case, in which the term prescribed well exceeds the life expectancy of a human being. Justice Mosk repeated those views when he criticized a lengthy sentence in his dissent in *People v. Deloza* (1998) 18 Cal.4th 585, a case involving a 111-year sentence. However eloquent, the dissenting opinions in those cases do not reflect the views of the majority of our Supreme Court. Forcible rape is a serious and dangerous crime, and the other sex offenses occurred over several years and were exploitative of family relationships. His recidivism increased the sentence, as allowed by statute.

19

Soliz has not presented authority or an analytical basis allowing us to conclude that this essentially life without parole sentence shocks the conscience, or is grossly disproportionate to the severity of the crimes. (*Lynch*, *supra*, 8 Cal.3d 410, 425-427; *In re DeBeque* (1989) 212 Cal.App.3d 241, 254-255; *Rummel v. Estelle* (1980) 445 U.S. 263, 271.) Although this sentence is heavy, it does not offend fundamental notions of human dignity or represent an Eighth Amendment or state constitutional violation.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.