Filed 7/5/22  P. v. Wulff CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077436 |
| v. | (Super.Ct.No. FWV21000016) |
| PHILLIP DALLAS WULFF, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Corey G. Lee, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Daniel Rogers, Acting Assistant Attorney General, Steve Oetting and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

1

## INTRODUCTION

A jury convicted defendant and appellant Phillip D. Wulff of driving while under the influence of alcohol (Veh. Code,[1] § 23152, subd. (a), count 1) and driving with a 0.08 percent or more blood-alcohol content (Veh. Code, § 23152, subd. (b), count 2). A trial court sentenced him to the upper term of three years in state prison on count 1 and stayed the sentence on count 2 under Penal Code section 654.

On appeal, defendant contends that the court erred by failing to give a unanimity instruction sua sponte. We conclude that any failure to give a unanimity instruction was harmless.

## FACTUAL BACKGROUND

*Prosecution Evidence*

Around 3:30 p.m. on January 1, 2021, J.H. was driving his car and was almost hit by a white work truck. He sped up to try to see who was driving, but the truck was swerving a lot, so he slowed down and got behind it to avoid being hit. J.H. followed about two car lengths behind the truck and saw it strike the curb on the right side of the road and then swerve into the left-hand lane, almost hitting another car. He called 911 to report the truck. J.H. continued to follow the truck and saw it bounce off the curb as the road curved left, swerve between lanes, and take a wide right turn and drive into oncoming traffic. J.H. followed the truck into the parking lot of an apartment complex. The truck stopped near a driveway by the pool. A few minutes later, a red sedan pulled

---

[1] All further statutory references will be to the Vehicle Code unless otherwise indicated.

2

up next to the truck. J.H. observed defendant step out of the driver's seat of the truck. Defendant appeared to have difficulty standing and leaned against the passenger side of the red sedan, as he talked to someone in that car. Then, the red sedan drove further into the complex. Defendant got back in his truck, drove, and stopped near a different driveway. A blonde female, L.M., walked out from the sidewalk to defendant's car window and talked to him for a minute. She then walked along the street and led defendant, who slowly followed her in the truck, to an empty parking space. J.H. observed defendant start to back the truck into the parking space. Defendant missed the first attempt, pulled forward again and struck a curb, then backed into the space and stopped abruptly. L.M. walked up to the driver's side of the truck, then went around to the passenger's side.

A minute or two later, a police officer pulled up next to J.H.'s car. J.H. pointed to where the truck was parked and described the driver as "an older, heavyset, white male adult." The officer drove to where the truck was parked and found it backed into the parking stall with its alarm going off. The driver's side door was open, and defendant and L.M. were standing near the open door. L.M. was holding the keys and appeared to be trying to turn off the alarm. The officer asked defendant and L.M. if they were okay and asked for their driver's licenses. L.M. immediately told him that she was driving and gave him her license. The officer asked defendant numerous times if he had anything to drink that day, and defendant responded that he had nothing. The officer, however, noticed signs that he was intoxicated, including that he was swaying while standing, had trouble maintaining balance, smelled strongly of alcohol, and his speech was slow and

3

slurred. L.M. did not show any signs of intoxication. The officer arrested defendant, and defendant then told him he was drunk. The officer administered two breath tests. The first one registered defendant's blood-alcohol content as 0.28 percent, and the second one taken three minutes later registered his blood-alcohol content as 0.27 percent.

At trial, the arresting officer testified and opined that defendant was under the influence of alcohol such that he was unable to operate a motor vehicle with the same care and caution as a sober individual. A criminalist also testified and confirmed that an individual with a blood-alcohol reading of 0.27 percent and 0.28 percent, well above the 0.08 percent limit, would be impaired for the purpose of safely operating a motor vehicle.

L.M., who was an intimate friend of defendant's, initially testified at trial that she did not see who parked defendant's truck because she got out of the truck and had to move her red sedan out of the way. She testified that she got out of the truck and did not see defendant, so she did not know if he parked it or not. The prosecutor then confirmed with L.M. that she talked with the officer who arrested defendant. When the prosecutor asked if she remembered telling him who parked the truck, she said, "Well, I thought maybe he [defendant] parked it." The prosecutor then asked if she had met with an investigator from the district attorney's officer two days prior to the trial, and if she had listened to a recording of the conversation between her and the arresting officer. She said yes and confirmed that she listened to the portion of the recording where she told the officer that defendant parked the truck "because he knows how to park it better."

On cross-examination, L.M. said she was out with defendant drinking at a bar on the day of his arrest. She testified that she drove the truck back to the apartment complex

4

because he was intoxicated, and they stopped at the home of a friend (H.B.) on the way back. L.M. said she drove to the apartment complex and stopped to get out since she had to move her car. When asked if she actually saw defendant back up the truck, L.M. said, "I didn't actually see him back it up. It was like ten feet that he just backed it up, I guess."

On redirect examination, L.M. said that defendant was lying down in the truck, but when they got back to the apartment complex, he got up. She testified, "Then that's when I got out to move my car, and then he backed it." The prosecutor clarified that defendant got into the driver's seat, and L.M. said, "Yes. To just back it in." The prosecutor stated, "And so you see [defendant] back in the car, I think you said ten feet?" L.M. said she did not know how much he moved it, so the prosecutor asked her to use the laser pointer to show "the exact movement [she] saw that truck take." As L.M. indicated the movement with the laser pointer, she said, "From like right here, and then backing it into the carport."

*Defense Evidence*

H.B. testified that L.M. pulled defendant's truck up to his garage on January 1, 2021, around 3:00 p.m. or 3:30 p.m. H.B. said L.M. and defendant got out of the truck, but defendant got back in the truck a second later to lay down. They only stayed a few minutes, and L.M. drove the truck away when they left.

5

## DISCUSSION

### Any Error in Failing to Give a Unanimity Instruction was Harmless

Defendant argues that the trial court prejudicially erred in failing to sua sponte instruct the jury on the requirement of unanimity. He asserts that, since the evidence at trial suggested more than one act of driving under the influence, the court was required to instruct the jury to unanimously agree on a single act to find him guilty. He specifically contends the evidence showed two acts of driving: (1) driving from the local bar to defendant's apartment complex; and (2) parking the truck in the parking lot. Defendant claims there was a risk the jury was unable to agree on which act of driving constituted the offense. We conclude any error in failing to give a unanimity instruction was harmless.

"In a criminal case, a jury verdict must be unanimous." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).) The jury must also "agree unanimously the defendant is guilty of a *specific* crime." (*Ibid.*) Thus, "when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid.*; see *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.) "Where no election is made, the court has a duty to instruct sua sponte on the unanimity requirement." (*People v. Curry* (2007) 158 Cal.App.4th 766, 783 (*Curry*).) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' " (*Russo*, at p. 1132.)

6

Defendant was charged in count 1 with driving under the influence of an alcoholic beverage, in violation of section 23152, subdivision (a). To prove defendant was guilty, the People were required to establish that: (1) he drove a vehicle; and (2) when he drove, he was under the influence of an alcoholic beverage. At oral argument, the People argued that the prosecutor relied on the act of defendant parking the truck to support its driving under the influence charge; therefore, no unanimity instruction was required. In the closing argument, the prosecutor stated that there was no question defendant was under the influence of alcohol, as the evidence showed his blood-alcohol content was measured at 0.27 percent and 0.28 percent. Thus, the only question was whether defendant drove a vehicle. The prosecutor then referred to jury instruction No. 2241, which defines driving as follows: "A person *drives* a vehicle when he or she intentionally causes it to move by exercising actual physical control over it. The person must cause the vehicle to move, and the movement may be slight."

The prosecutor noted there was a discrepancy in the evidence as to who drove the truck from the bar to the apartment complex since J.H. testified it was defendant, while L.M. testified that she was the driver. The prosecutor then argued: "*Forget all of [J.H.'s] testimony. Forget it.* [L.M.], when she talked to the officer thought she was helping out the defendant. 'No, I was driving. He was backing up. He parked the car. He's a better parker than me. He parked the car.' [¶] What [L.M.] didn't know is that she didn't know the definition of driving. [L.M.] puts the defendant in the driver's seat, and he backs it up into the parking stall. He intentionally caused it to move into the parking stall. No matter how slight it is, he moved it while under the influence of

7

alcoholic beverage. Defense counsel cannot get around this jury instruction and neither can you. [¶] *So when you go to the jury room, you don't even have to debate [J.H.] versus [L.M.] versus [H.B.]. [Defendant] backed up the car while under the influence of an alcoholic beverage.* Find him guilty of A [*sic*], driving under the influence, and driving with a .08 blood alcohol concentration. [¶] Thank you." (Italics added.)

"The prosecution can make an election by 'tying each specific count to specific criminal acts elicited from the [witness's] testimony'—typically in opening statement and/or closing argument." (*People v. Brown* (2017) 11 Cal.App.5th 332, 341, quoting in part from *People v. Diaz* (1987) 195 Cal.App.3d 1375, 1382.) A direct and clear statement tying specific counts to specific criminal acts "qualifies as an effective election." (*People v. Brugman* (2021) 62 Cal.App.5th 608, 629.) As previously noted, at oral argument, the People argued that the prosecutor below elected the act of defendant parking the truck as the basis for the charged crime and cited L.M.'s testimony that defendant parked the truck.

Assuming without deciding that no election was made, any error in failing to give a unanimity instruction was harmless. "There is a split of opinion in the appellate courts as to whether the *Chapman* standard or *Watson* standard for harmless error applies in a unanimity instruction case." (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 576 (*Hernandez*); see *People v. Matute* (2002) 103 Cal.App.4th 1437, 1448 (*Matute*).) Under *Watson*, a judgment cannot be reversed unless there is a reasonable probability that the jury would have reached a more favorable verdict if the error had not occurred. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Under *Chapman*, we must "conclude beyond a

8

reasonable doubt that each juror agreed on the particular criminal act that formed the basis of the verdict." (*Hernandez*, at p. 578.)

In his closing argument, the prosecutor referred to the jury instruction that defined driving (No. 2241) and argued that L.M. "put[] the defendant in the driver's seat, and he backs it up into the parking stall. He intentionally caused it to move into the parking stall. No matter how slight it is, he moved it while under the influence of alcoholic beverage . . . So when you go to the jury room, you don't even have to debate [J.H.] versus [L.M.] versus [H.B.] *[Defendant] backed up the car while under the influence of an alcoholic beverage.* Find him guilty of [] driving under the influence, and driving with a .08 blood alcohol concentration. Thank you." (Emphasis added.) The prosecutor clearly explained to the jury that defendant was guilty of driving while under the influence of alcohol because he drove when he backed up the truck to park it. Moreover, while the evidence was disputed as to whether defendant was the driver who drove the vehicle from the bar to the apartment complex, the evidence was not disputed that defendant was the driver who backed the truck into the parking stall. The affirmative evidence specifically pointed to defendant as the driver who parked the truck in the parking stall, and there was not a scintilla of evidence that it could have been anyone else. Thus, while the jury may not have all agreed that defendant drove to the apartment complex, there is no reasonable doubt on this record that it found that defendant did drive the vehicle into the parking stall. We further note that "where the defendant offered the same defense to all criminal acts and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error."

9

(*Hernandez*, *supra*, 217 Cal.App.4th at p. 577.)  Defendant's only defense was that L.M. drove the truck, not him.[2]  Therefore, any error in failing to give the unanimity instruction was harmless beyond a reasonable doubt.  Further, there is no probability on this record that defendant would have received a more favorable verdict if a unanimity instruction had been given.

In sum, defendant conceded that he was under the influence, and L.M. testified that defendant parked the truck.  Defendant's only defense was that he did not drive.  However, in finding him guilty of driving under the influence of alcohol, the jury necessarily found that defendant drove the truck.  Based on the evidence presented, the guidance given by the court's instructions, and the prosecutor's closing argument, we are convinced beyond a reasonable doubt that the jury unanimously agreed defendant drove the truck at least long enough to park it.  Thus, any error in not giving the unanimity instruction was harmless under the *Chapman* standard.  (See *Matute*, *supra*, 103 Cal.App.4th at pp. 1449-1450.)  For the same reasons, we conclude it is not reasonably

---

[2]  In his reply brief, defendant claims that his defense to each act "was different in that he argued two different people drove the truck: [L.M.] drove from the 210 Tavern to appellant's apartment complex and someone other than appellant parked it."  However, in his closing argument, defense counsel merely asserted that L.M. said she did not know who parked the truck.  We note that L.M. testified that defendant backed the truck into the parking space.  Furthermore, contrary to defendant's claim in his reply brief, there was no evidence that anyone other than defendant parked it.

probable that defendant would have obtained a more favorable verdict had the unanimity instruction been given.[3]

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
Acting P. J.

We concur:

RAPHAEL _____
J.

MENETREZ _____
J.

---

**3** In its brief, the People additionally contend the abstract of judgment incorrectly reflected that the sentence imposed on count 2 was imposed concurrently, when it was actually stayed pursuant to Penal Code section 654. We note that, subsequently, appellate counsel submitted an informal request to the court to correct the abstract of judgment accordingly and an amended abstract of judgment was filed on November 22, 2021, reflecting the change.