Filed 3/28/24  P. v. Evangelista CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B328423 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA506988) |
| v. | |
| ROBERT FRANKES EVANGELISTA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Drew E. Edwards, Judge.  Affirmed in part and reversed in part with directions.

Olivia Meme, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Ana R. Duarte and Kenneth C. Byrne, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Robert Frankes Evangelista appeals from his conviction of one count of carjacking, one count of robbery and one count of attempted robbery. He contends the trial court committed instructional error, evidentiary error and sentencing error, and also raises a claim of ineffective assistance of his trial counsel. We reverse the sentence imposed on counts 1 and 2 and remand for the limited purpose of allowing the trial court to conduct a new sentencing hearing. We affirm the judgment of conviction in all other respects.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was charged, along with codefendant Hugo Pereida, with carjacking (Pen. Code, § 215, subd. (a); count 1), second degree robbery (§ 211; count 2), attempted carjacking (§§ 215, subd. (a), 664; count 3), and attempted robbery (§§ 211, 664; count 4). The charges arose from events that occurred on July 6, 2022, involving two different victims, Cris Flores (counts 1 & 2) and his father, Luis Flores (counts 3 & 4).

Cris Flores lived with his father in Boyle Heights. On July 6, 2022, around 6:30 a.m., Cris arrived home from working the graveyard shift at his job. His father's BMW was parked in front of the house when he got home. The BMW is silver and has distinctive chrome rims.

Sometime later that morning, Luis was getting ready to leave for his job, but could not find his car keys. He woke up Cris and they searched the house. They were unable to find the keys. Around 11:00 a.m., Luis noticed his BMW was no longer parked in front of their house. Cris got into his black Dodge and drove around the neighborhood looking for the BMW to no avail. In the meantime, Luis called 911 to report the car stolen and was told that a unit would be responding to the house, but no officers ever arrived.

Because a key to their house was also on Luis's missing key chain, Cris and Luis bought new locks for the front door and installed them. By the afternoon, the police still had not arrived, so Luis decided they should drive to the police station to report the car theft. They took Cris's Dodge. Luis drove. On their way to the police station, they saw the stolen BMW parked next to a taco stand.

Luis pulled up next to the BMW and parked, blocking the BMW from being driven away. The doors of the BMW were open, and a man dressed in black was seated in the front passenger seat (later identified only as "Sierra").

Luis and Cris approached the BMW on the driver's side and asked Sierra where he got the car. Sierra grabbed something from the center console area before jumping out of the BMW. Luis reached into the car hoping to find his keys but they were not in the car. He saw a blow torch near the center console and grabbed it.

Luis then saw defendant and Pereida approaching them from across the street. Defendant was wearing a pair of shoes Luis had left in the BMW (brown suede "Jordans" referred to as "peanut butter shoes" because of their color). Luis and Cris asked defendant what was going on and where he got the car. Defendant claimed the BMW was his and that he bought it from some "homegirl." Luis responded that it was his car and it had been stolen from his house. After some yelling back and forth, defendant eventually tossed the key chain to Luis, but the house key was not on it—only the key fob for the BMW. Luis demanded his house key and told everyone that no one was leaving, they were going to wait for the police to arrive.

Luis allowed defendant to retrieve some personal items from the BMW (a hat and some gloves), but defendant also grabbed paperwork belonging to Luis. Defendant told Pereida to "grab the rest of their shit." Pereida took something from the trunk of the

3

BMW, but Luis was not sure what it was. At the same time, Sierra grabbed a backpack from the BMW from which he pulled out a gun and pointed it at Luis and Cris.

Luis said the "dynamic" of their confrontation changed at that point. Luis was concerned for his son, who was standing slightly behind him and videotaping the incident on his cell phone. Defendant told Luis that he had the paperwork from the BMW so he knew where Luis lived, and he would go to his house and "blast" or "smoke" him. Defendant told Sierra several times to shoot Luis and Cris. The audible portions of the videotape of the incident were transcribed and show defendant twice telling Sierra to "Shoot this fool" and another time saying, "Blast this fool."

Luis and defendant squared off as if to fight and each took a few swings, but neither landed any punches. Luis continued to hold onto the blow torch believing it was keeping defendant at bay.

Defendant and Sierra continued to threaten Luis and Cris, saying to back off, and they were going to take both cars. At some point, Sierra chased after Cris with the gun, while defendant walked up to Cris's Dodge and opened the driver's side door as if to get in. Sierra ran to the Dodge, jumped in and drove off. Defendant and Pereida fled on foot. Luis and Cris got into the BMW and tried to follow the Dodge but were unable to find it. They flagged down two deputy sheriffs and reported the incident.

Luis testified he did not sell the BMW to anyone and did not give defendant or anyone permission to take the BMW. Cris testified he did not give anyone permission to take his Dodge. The Dodge contained a cell phone, air pods, money, jewelry, and both Cris's and Luis's wallets, none of which was recovered. None of the items taken from the BMW was recovered, except for the pair of shoes that defendant had taken from the car and put on. The shoes were returned to Luis after defendant's arrest.

Videotape evidence of the incident from Cris's cell phone and a nearby security camera were played for the jury.

Defendant did not offer any witnesses or testify on his own behalf.  Codefendant Pereida testified that defendant showed up at his work, with Sierra, in a BMW and told him that he had just bought the car.  Defendant appeared to have paperwork for the car, but Pereida did not read it or know what it said.  Defendant offered to drive Pereida to a nearby taco stand to get some lunch.  After ordering his food, Pereida walked toward a liquor store to buy a phone charger, but before he got inside he heard a commotion behind him.  When he turned around, he saw defendant and Sierra arguing with two other men.  He walked back over and tried to diffuse the "chaotic" situation, but everyone kept yelling at one another.  At some point, Sierra pulled out a gun.

The jury found defendant guilty on counts 1, 2 and 4 and acquitted him on count 3.  Pereida was acquitted on all charges.

Defendant waived his right to a jury trial on aggravating factors and admitted he suffered two prior convictions in 2020 for which he served a prison term:  burglary (Pen. Code, § 459) and possession of a firearm by a felon (§ 29800).

The court sentenced defendant to six years six months calculated as follows:  a five-year midterm on count 1, plus a consecutive one-year term (one-third the midterm) on count 2, plus a consecutive six-month term (one-third the midterm) on count 4.  Defendant was awarded 224 total days of presentence custody credits (195 actual, 29 conduct).

This appeal followed.

## DISCUSSION

### 1.    Penal Code Section 654 (Counts 1 & 2)

The People concede that Penal Code section 654 applies to counts 1 and 2, acknowledging *People v. Corpening* (2016) 2 Cal.5th

307, 315 which held that the forceful taking of a victim's car was a "single physical act for purposes of section 654 because that act simultaneously accomplished the actus reus requirement for both the robbery" of the valuables in the car and the carjacking of the vehicle itself.

The People contend that remand is not necessary, and this court should modify the judgment to impose a stay on count 2. Defendant says remand for resentencing is necessary because Penal Code section 654 no longer requires the court to impose the longest possible sentence when an act is punishable under two different statutes. We agree remand is warranted.

Defendant was sentenced on January 17, 2023, a year after Assembly Bill No. 518's amendments to Penal Code section 654 went into effect. Section 654 now grants trial courts the discretion to choose which sentencing provision to apply when defendants have committed criminal acts that are punishable under more than one statutory provision. Trial courts are no longer obligated to impose the sentence under the provision that contains the longest sentence but may, instead, stay the term of the longer sentence and apply an applicable provision that contains a shorter term. (Stats. 2021, ch. 441, § 1.)

Carjacking (count 1) is punishable under Penal Code section 215, subdivision (b) which specifies a sentencing triad of three, five, or nine years. Second degree robbery (count 2) is punishable by a term of two, three, or five years. (§ 213, subd. (a)(2).) Nothing in the record unequivocally indicates whether the court would exercise its discretion to impose the longer sentence on count 1 and stay count 2 or vice versa. Remand is therefore appropriate to allow the trial court to exercise its sentencing discretion in the first instance. We express no opinion as to how the court should exercise its discretion at resentencing.

## 2.    The Unanimity Instruction (Count 4)

Defendant contends the trial court committed prejudicial error by failing to sua sponte instruct the jury that it had to unanimously agree on the act which constituted the attempted robbery of Luis charged in count 4.  He says the prosecution presented and argued both an attempted taking from the BMW and an attempted taking from the Dodge without making an election, and he offered different defenses to both acts, thus necessitating a unanimity instruction.

It is undisputed defendant did not request a unanimity instruction.  However, the court has a sua sponte duty to provide such an instruction if the evidence warrants it.  (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.)  " 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' [Citation.]  [¶]  On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty.' " (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).)

A unanimity instruction is not required when the acts committed by the defendant constitute "a continuous course of conduct . . . so closely connected in time as to form part of one transaction." (*People v. Maury* (2003) 30 Cal.4th 342, 423; *People v. Bui* (2011) 192 Cal.App.4th 1002, 1010–1011 [" 'continuous conduct' exception [citation] applies if the defendant tenders the same defense or defenses to each act and if there is no reasonable basis for the jury to distinguish between them' "].)  *Russo* instructs that

"unanimity as to exactly how the crime was committed is not required. Thus, the unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' " (*Russo*, *supra*, 25 Cal.4th at p. 1135.)

Defendant did not offer separate defenses to carjacking or robbery of the BMW. His conduct appears to be part of a continuous course of conduct, asserting his right to possess the BMW and all its contents irrespective of the fact it was blocked by the Dodge. In any event, assuming it was error, it was harmless beyond a reasonable doubt.

There is a split of opinion in the appellate courts as to which harmless error standard applies in a unanimity instruction case. (See, e.g., *People v. Matute* (2002) 103 Cal.App.4th 1437, 1448-1449 [noting conflicting authorities].) Like the majority of courts that have addressed the issue, we apply the federal standard. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 576–577.) "[W]here the defendant offered the same defense to all criminal acts and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error." (*Id.* at p. 577.) Because defendant has not demonstrated prejudice, his claim that defense counsel was ineffective for failing to request a unanimity instruction also fails.

3. **The Impeachment Evidence**

Defendant contends the court committed prejudicial error by excluding evidence that Luis had a prior felony conviction of assault. Defendant says the evidence was directly relevant to his claim of self-defense and admissible under Evidence Code sections 352 and 1103 and should not have been sanitized by the court. Defendant concedes his trial counsel did not object to the court's

8

decision to sanitize the prior conviction evidence and urges us to find his defense counsel was ineffective for failing to object.

Defendant has waived this claim of evidentiary error by failing to object in the trial court. (*People v. Flinner* (2020) 10 Cal.5th 686, 726.)

Defendant has also failed to demonstrate his trial counsel provided ineffective assistance by failing to object. (*People v. Johnson* (2016) 62 Cal.4th 600, 653 (*Johnson*) [under two-pronged test, a defendant must show counsel's representation fell below an objective standard of reasonableness and a reasonable probability that but-for counsel's error, the defendant would have obtained a more favorable outcome at trial]; *Strickland v. Washington* (1984) 466 U.S. 668, 688, 693–696.)

An attorney's failure to object rarely constitutes ineffective assistance. (*People v. Huggins* (2006) 38 Cal.4th 175, 206.) Our ability as an appellate court to assess whether an attorney's representation was constitutionally deficient is limited because the record, as here, usually does not contain any explanation of the attorney's strategy. (*Johnson, supra*, 62 Cal.4th at p. 653.) For this reason, the Supreme Court "long ago adopted the rule that ' "[i]f the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal. [Citation.]" ' [Citations.] The merits of such claims are more appropriately resolved, not on the basis of the appellate record, but rather by way of a petition for writ of habeas corpus." (*Ibid.*)

In any event, even assuming the contention had been preserved, we would reject it. Defendant has not shown that evidence that Luis's prior conviction was for assault would have

9

caused the jury to form a different impression of Luis's credibility. The felony conviction was almost 10 years old at the time of trial and had been reduced to a misdemeanor false imprisonment charge by a subsequent order of the court. Defendant was *not* denied the opportunity to impeach Luis with the prior felony conviction and in fact, Luis candidly admitted to both that conviction and the misdemeanor contempt of court conviction.

Moreover, the jury was able to reasonably and fairly assess defendant's claim of self-defense based on the videotape evidence of the incident. The jury was able to assess Luis's credibility in light of that evidence, as well as defendant's claim of self-defense which was presented only as argument by counsel since defendant exercised his constitutional right not to testify. Defendant has not demonstrated either prong of an ineffective assistance claim.

## DISPOSITION

The sentences imposed on counts 1 and 2 are reversed and the case is remanded to the superior court for the limited purpose of conducting a new sentencing hearing. The judgment of conviction is affirmed in all other respects.


GRIMES, J.

WE CONCUR:



STRATTON, P. J.



VIRAMONTES, J.