Filed 3/28/25  P. v. Brewer CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098945 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE004450) |
| v. | |
| BOBBY LOYD BREWER, SR., | |
| Defendant and Appellant. | |

A jury found defendant Bobby Loyd Brewer, Sr., guilty of 12 counts of lewd touching of his granddaughter.  The trial court sentenced defendant to 30 years in state prison.  On appeal, defendant argues the trial court gave the wrong jury instruction on unanimity–CALCRIM No. 3500 instead of CALCRIM No. 3501.  Defendant also argues the trial court erred in imposing consecutive terms for each count.  Finally, to the extent this court concludes defendant forfeited either contention, defendant contends counsel's failure to object amounted to ineffective assistance of counsel.  We affirm the judgment.

1

## FACTS AND HISTORY OF THE PROCEEDINGS

The second amended information charged defendant with 12 counts of lewd conduct against a minor under 14 years of age, who was at the time eight to nine years old. (Pen. Code, § 288, subd. (a).) (Statutory section citations that follow are found in the Penal Code unless otherwise stated.) For the first count, the information alleged "defendant did willfully, unlawfully, and lewdly commit a lewd and lascivious act, to wit, hand to genitalia in the car." For the next 10 counts, the count started with, "For a further and separate cause of action, being a different offense from but connected in its commission to" each of the prior pleaded counts, then repeated the above quoted language, and then added "[at a] time different than [the prior counts]" between May 1, 2021, and January 9, 2022. Separately, the information alleged count 12 occurred on January 10, 2022. The information alleged as aggravating factors that the victim was particularly vulnerable, the manner in which the crime was carried out indicated planning, sophistication, or professionalism, and the defendant took advantage of a position of trust. (Cal. Rules of Court, rule 4.421 (a)(3), (8), & (11); rule citations that follow are found in the California Rules of Court unless otherwise stated.)

At trial, the victim testified she was 10 years old in May 2023. Thus she was eight or nine years old at the time of the charged offenses. Defendant was born in 1951.

The victim testified defendant moved into the family home when she was nine. The victim testified defendant drove her to the movies and she sat in the passenger seat. When they drove to the movies, defendant would touch the victim "in [her] private part" under her clothes for a long time with his bare fingers. The victim was certain defendant touched her more than 10 times. She did not tell anyone about this because she was scared she would get in trouble. Ultimately, she told her sister, M.G.

The victim's sister testified she suspected something was going on a little bit before the victim told her about it. One day, the victim told M.G. "[defendant] is being

2

weird." M.G. inquired further and the victim said, he "keeps touching me" under her underwear and pointed down to her vagina. The victim told her sister this happened every time when they went out to the movies, the store, or other places. M.G. testified defendant took the victim out a couple times a week.

Sacramento County Sheriff's Detective Bobi Griggs interviewed defendant on January 12, 2022. The jury saw that video at trial. Defendant admitted he took the victim to the movies once or twice a week. He initially denied any improper contact with her. Eventually, however, he admitted he touched her vagina and put his middle finger inside her vagina while he was driving a "couple times." While defendant first denied having touched her more than 10 times, he later agreed "maybe" it could have been 12 or even more times. He also showed the detective how he could reach the victim while he drove and she sat in the front seat.

A forensic interviewer interviewed the victim on January 24, 2022. The jury also saw that video. During that interview, the victim told the interviewer she was there because her grandpa touched her on her private part. She confirmed defendant touched her both on top of her underwear and inside of it. She said it started in 2021 when she was nine. Her description of the exact number of times it happened was a bit confusing. At one point, she said it happened less than five times on the way to get food and less than about 10 times when they went to the movies. Then she said it was "like 20 or like 19 times" on the way to the movies. The victim said the last time this happened was when they were going to the movies or out to eat.

The victim told the interviewer details about the last time defendant touched her. That day, defendant and the victim were headed to the movies. She sat in the front passenger seat of the car. She said she had pants on and when they got into the car, defendant asked her if she remembered that he was going to put his hand in her pants. She was mad and told him not to do that. The victim told the interviewer defendant asked if he could "lick on it," and she said, "No." Defendant put his hands in her

3

underwear and touched inside her private part with his fingers while he was driving. Defendant just wiggled his fingers up and down. Defendant stopped doing it at red lights because there were people around. After the movie, the two returned to the car to drive to the mall. While they were driving, defendant again placed his hand in the victim's underwear. After the visit to the mall, they returned to the car to drive home, and once again, defendant started touching her under her underwear.

A criminologist testified DNA evidence demonstrated that male DNA consistent with defendant (and any other male relative of his lineage) was found on the inside of the front of the victim's underwear. A pediatrician testified she found no trauma on the victim's body.

During closing argument, the prosecutor told the jury, "Unanimity. We've talked about the number of times that this has occurred to [the victim] at the hands or the hand of the defendant. You have been presented with evidence more than just the 12 counts he's charged with. So you must not find the defendant guilty unless you all agree that the People have proved the defendant committed at least one of these acts and you all agree on which act he committed. So if you believe he did at least 12 molestations, 12 digital penetrations, 12 times, sometimes even in the same day, then as long as you all agree that it happened and which one did, that's what unanimity means. [¶] They went out alone at least twice a week. He always did the same thing, digital penetration on the way to the movies or food. On the way home. Molested four times a week for at least three months. No less than 48 times. Likely more."

In his closing, defendant's counsel did not argue about unanimity, but rather focused on other issues like, the presumption of innocence, how circumstantial evidence should be considered, the prosecution's burden of proof, and other shortcomings he perceived in the evidence.

The trial court instructed the jurors with CALCRIM No. 3500, as follows: "The defendant is charged with lewd and lascivious acts with a child under the age of 14 years

4

in Count 1 through 12. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

The trial court also instructed the jury on the concept of the offenses taking place on separate occasions, "If you find the defendant guilty of the crimes charged in Counts 1 through 12, you must then decide whether, for each crime, the People have proved the additional allegations that the defendant committed each crime on a separate occasion under Penal Code Section 667.6(b)(1). [¶] In determining whether the crimes against a single victim were committed on separate occasions, consider whether, between the commission of one sex crime and another, the defendant had -- had a reasonable opportunity to reflect upon his actions and nevertheless resumed sexually assaultive behavior. [¶] Neither the duration of time between crimes, nor whether the defendant lost or abandoned the opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions. [¶] You may not find the allegation true unless all of you agree that the People have proved that the defendant committed each crime on a separate occasion."

The jury found defendant guilty on all 12 counts. As to each count, the jury further found true the three aggravating factors pleaded and that the crime was committed on a separate occasion under section 667.6.

The probation report noted the jury's true findings on section 667.6, but informed the trial court that section 667.6 could not be applied in this case as the convictions were not for an offense covered by that section. It recommended that the trial court impose the low term of three years in state prison on the first count and a consecutive one-third the middle term (two years) as to each of the other 11 counts for a total sentence of 25 years. The probation report based its recommendation on consecutive sentences on the language of rule 4.425(a)(3), stating, "the crimes were committed at different times or separate

5

places, rather than being committed so close in time and place as to indicate a single period of aberrant behavior.  (667.6 PC found true.)"  (Bold omitted.)

At sentencing, the trial court stated it had received, read, and considered the probation report.  It indicated its tentative sentence was the upper term of eight years on the first count and a total sentence of 30 years in state prison.  Defense counsel responded by reminding the trial court it had the discretion to run some of the terms concurrently rather than consecutively and argued the trial court should impose a total sentence somewhere in the range of eight to 12 years.  The trial court rejected that argument as "extremely unreasonable" given the defendant's lack of remorse and the aggravating factors the jury found true.

The trial court sentenced defendant to 30 years in state prison.  This included the upper term of eight years on the first count based on the jury's findings of aggravating factors.  The principal term was followed by 11 consecutive terms of two years (one-third the middle term) "as the allegation pursuant [to] section 667.6 for all counts was found true by the jury."

Defendant filed a timely notice of appeal.

DISCUSSION

I

*Jury Instructions*

Defendant contends that, the trial court gave the wrong unanimity instruction.  He argues that although the trial court gave CALCRIM No. 3500, it should have given CALCRIM No. 3501.

In a criminal case, a jury verdict must be unanimous.  (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)  " 'When the evidence tends to show a larger number of distinct violations of the charged crime than have been charged and the prosecution has not elected a specific criminal act or event upon which it will rely for each allegation, the

6

court must instruct the jury on the need for unanimous agreement on the distinct criminal act or event supporting each charge . . . .' " (*People v. Whitham* (1995) 38 Cal.App.4th 1282, 1295.) Whether a particular instruction should have been given in a case is a predominantly legal question reviewed under the de novo standard. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

As noted above, the instruction the trial court gave here–CALCRIM No. 3500– provides: "The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

By contrast, the relevant portion of CALCRIM No. 3501 provides: "The People have presented evidence of more than one act to prove that the defendant committed (this/these) offense[s]. You must not find the defendant guilty unless: [¶] 1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed [for each offense]; [¶] OR 2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period [and have proved that the defendant committed at least the number of offenses charged]."

CALCRIM No. 3501 is derived from *People v. Jones* (1990) 51 Cal.3d 294. Historically, prior to *Jones*, courts applied an "either/or" rule to address the unanimous finding a jury would need to reach to find a defendant guilty when the number of potentially criminal acts described in a sexual abuse or assault case exceeded the number of counts charged. (*Id.* at p. 307.) Under this rule, "either" prosecutors would need to select specific acts to prove for each charge, "or" the court would need to instruct the jury that it must unanimously agree beyond a reasonable doubt that the defendant committed one of the specific acts alleged for each charge. (*Ibid.*)

7

In *Jones*, the court considered whether it would be possible for a jury to reach a unanimous conclusion with respect to counts alleging a resident child molester defendant committed lewd and lascivious acts on a child under the age of 14 when the evidence introduced is "nonspecific or 'generic' " testimony by a child victim, in which the victim is unable to "furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults" that victims of more isolated instances of crime might be able to provide. (*People v. Jones*, *supra*, 51 Cal.3d at pp. 299-300.) Our Supreme Court concluded that when a victim witness could testify with sufficient specificity as to the type of conduct involved, its frequency, and that it occurred in the requisite time frame, the testimony would be sufficient to establish the substantiality of the victim's testimony in child molestation cases. (*Id.* at p. 316.) The court advised that in resident child molester cases, "the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." (*Id.* at p. 322.) Jury instructions that included this modification would reflect the fact that "in such cases, although the jury may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described." (*Id.* at p. 321.)

We find *People v. Matute* (2002) 103 Cal.App.4th 1437 instructive on this issue. In *Matute*, at page 1439, the trial court convicted the defendant of 15 counts of forcibly raping his daughter. In addition to arguing that the court denied him due process by allowing a jury to convict him based on "vague" and nonspecific testimony–of the sort contemplated in *Jones*–the defendant argued that "the purported due process violation here was exacerbated by the trial court's failure to give a juror unanimity instruction as it was required to do sua sponte." (*Id.* at pp. 1443, 1447.) The Court of Appeal did not agree that the trial court erred in allowing a conviction based on generic testimony, but it did agree that the trial court erred when it failed to provide a unanimity instruction,

8

concluding the trial court ought to have given the modified instructions described in *Jones* that would have allowed for a conviction "if the jurors unanimously agree on specific acts," or "if the jury unanimously agrees the defendant committed all the acts described by the victim." (*Id.* at p. 1448.) But the Court of Appeal found that the error was harmless under both *People v. Watson* (1956) 46 Cal.2d 818, 836 (whether it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error) and *Chapman v. California* (1967) 386 U.S. 18 (prejudice must be deemed harmless beyond a reasonable doubt). (*Matute*, at p. 1449.) This was so because between the closing arguments and other instructions there could have been "no confusion in the jury's mind that they were being asked to decide whether appellant raped J.M. 15 times over the period from August 1999 to November 2000." (*Ibid.*) Moreover, the victim's testimony, "reflected the ongoing, repetitive nature of the rapes which had blurred together in her mind, except for [a handful of] specific occasions" and "[a]ppellant's only defense was to deny that he ever had sexual intercourse with his daughter." (*Id.* at p. 1450.)

We conclude in light of the overall jury instructions, the defendant's asserted defenses (which did not include unanimity), and the uncontroverted evidence defendant reached into the victim's pants and put his finger into her vagina at least twice a week for several weeks, as well as defendant's own admission he did this a couple times (and his tacit agreement he "maybe" did this more than a dozen times), any problem with this jury instruction on unanimity was harmless under any standard. There could be no confusion in the jury's mind the People asked it to determine if defendant engaged in 11 separate lewd touchings between May 1, 2021, and January 9, 2022, and once on January 10, 2022. The prosecutor told the jury it was required to find the "People have proved the defendant committed at least one of these acts and you all agree on which act he committed. So if you believe he did at least 12 molestations, 12 digital penetrations, 12 times, sometimes even in the same day, then as long as you all agree that it happened and

9

which one did, that's what unanimity means." There is no reasonable likelihood that the jurors disagreed as to which acts were committed; the only question on this record was whether defendant in fact committed all of them; and they found all of the charges true. The record does not provide a rational basis for the jury to have distinguished among the various acts of molestation alleged so as to find defendant guilty of some of these acts but not guilty of others. (*People v. Deletto* (1983) 147 Cal.App.3d 458, 466, 473.)

II

*Consecutive Sentences*

Defendant argues he is entitled to resentencing because the trial court erroneously used the jury's findings under section 667.6 to impose consecutive sentences.

"Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) Absent evidence to the contrary, "[w]e assume the trial court was aware of and followed applicable law." (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724-725.)

We agree with the parties that section 667.6, subdivision (d)'s mandatory requirement for consecutive full sentences does not apply here. Section 288, subdivision (a) is not included in the statutes singled out for this treatment in section 667.6, subdivision (e).

But that is not the end of the matter. The record does not disclose the court proceeded under the assumption it lacked discretion to impose concurrent sentences or erred in exercising that discretion to impose consecutive sentences here.

First, if the trial court had believed section 667.6, subdivision (d) applied, it would have imposed 11 consecutive full-term sentences as conceded by defendant. But the trial

court did not. Rather, it imposed 11 consecutive subordinate terms as one-third the middle terms for the subordinate term as allowed by section 1170.1, subdivision (a).

Second, the court's sentencing colloquy demonstrates the trial court understood the scope of its discretion. When defense counsel argued for a shorter term than the 25 years recommended in the probation report, defense counsel reminded the trial court it had discretion to impose some concurrent and some consecutive terms. Rather than respond it did not have that discretion, the trial court rejected defendant's request as "extremely unreasonable."

Third, the probation report explicitly stated that section 667.6, subdivision (d) did not apply. It recommended the trial court impose consecutive sentences under the authority of rule 4.425(a)(3), and believed the jury's findings concerning the factual allegations under section 667.6 informed this decision.

Rule 4.425(a)(3) provides one of the factors affecting the decision to impose consecutive rather than concurrent terms. Under that rule, a trial court may impose a consecutive term if "The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Rule 4.425(a)(3).)

The standard under section 667.6, subdivision (d)(2) is similar. It states, "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned the opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6, subd. (d)(2).) The trial court properly instructed the jury on this concept.

11

These two tests, while distinct, are sufficiently similar for the trial court's determination to impose or not impose consecutive sentences under the rules of court in this case. The jury's factual finding defendant engaged in multiple sexual assaults against this victim on separate occasions and had a reasonable opportunity to reflect on his actions between each of those assaults is entirely consistent with the trial court's finding under rule 4.425(a)(3), that the crimes were committed at different times. Indeed, when viewed in light of the probation report, the trial court's statement it imposed "consecutive sentences as the allegation pursuant [to] section 667.6 for all counts was found true by the jury" represents its finding it found the crimes occurred at different times under the rule.

This finding is supported by the facts presented. Each of the relevant 11 counts were alleged to have occurred between May 2021 and January 2022 "[at a] time different than" the other counts. The undisputed evidence before the jury (and the trial court judge who presided over the trial) was that these crimes occurred twice a week during separate car rides to and from the movies or for food during that time period. Under either formulation of the test, these crimes occurred on separate occasions and were committed at different times. The trial court was entirely within its discretion to impose consecutive terms here. Defendant has not demonstrated the trial court misunderstood its discretion or inappropriately imposed consecutive sentences.

III

*Ineffective Assistance of Counsel*

Because any error in the jury instruction was harmless and the trial court did not err in imposing consecutive sentences, we also reject defendant's claim of ineffective assistance of counsel based on defense counsel's lack of objection. The lack of any objection did not prejudice defendant in any way. (*Strickland v. Washington* (1984) 466 U.S. 668, 688.)

DISPOSITION

The judgment is affirmed.

                                         _____

                                         HULL, Acting P. J.

We concur:

_____

KRAUSE, J.

_____

MESIWALA, J.